No. 2--05--0888        Filed 5/3/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, INDIVIDUALLY AND SEVERALLY SUBSCRIBING TO POLICY CERTIFICATE NUMBER 03HPOM210, | ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 04--MR--972 |
| PROFESSIONAL UNDERWRITERS AGENCY, INC., PUA PROFESSIONAL INSURANCE SERVICES, RAMKRISHNA H. CHANDARANA, and SANDIP R. CHANDARANA, | ) ) ) ) ) ) | |
| | ) ) | Honorable Edward R. Duncan, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

The lone issue presented in this appeal is whether an insurer that has a pending claim for rescission of an insurance contract must initially provide to the insured a defense in an underlying action, during the pendency of the rescission action. Under the circumstances presented here, we hold that an insurer's obligation to act on its duty to defend is delayed until the conclusion of the rescission action. If the insurer eventually loses in the rescission action, it will be liable for the cost of the defense, both during and

after the rescission action, to the extent dictated by the governing insurance policy. If the insurer succeeds in the rescission action, it will not be liable for any of the cost of the defense.

Plaintiffs, those certain underwriters at Lloyd's individually and severally subscribing to policy certificate number 03HPOM210, filed a two-count complaint for declaratory judgment on August 8, 2004, against defendants, Professional Underwriters Agency, Inc., PUA Professional Insurance Services, Ramkrishna H. Chandarana, and Sandip R. Chandarana. The complaint alleged that defendants, an insurance agency specializing in professional liability insurance, made material misrepresentations in securing an "Insurance Brokers and Agents Errors and Omissions Insurance Policy" from plaintiffs, and both counts of the complaint sought rescission of the parties' insurance contract. After a negligence and fraud action was filed by J.E. Dunn Construction, which is not a party to this suit, against defendants, defendants tendered defense of the Dunn action to plaintiffs pursuant to the terms of the parties' insurance policy. Citing its rescission of the parties' policy, plaintiffs refused to defend defendants in the Dunn action and instead filed a second amended complaint, which realleged the first two counts for rescission of the parties' insurance policy and also added five new counts. Count III sought a declaration that plaintiffs owed defendants no coverage for the Dunn claim due to the alleged materially false representations defendants made on their insurance application to plaintiffs. Count IV sought a declaration that plaintiffs owed defendants no coverage for the Dunn claim because the Dunn claim included a claim of fraud, and fraud was excluded under the parties' policy. Count V sought a declaration that plaintiffs owed no coverage for any punitive damages arising out of the Dunn action, because punitive damages were excluded

under the parties' insurance policy. Count VI sought a declaration that plaintiffs owed no coverage for the Dunn claim to the extent the claim was a result of defendants' intentional acts, because intentional acts were excluded from coverage under the policy. Finally, count VII sought a declaration that plaintiffs owed defendants no duty to defend the Dunn claim because the parties' policy was rescinded pursuant to the allegations made in the first two counts of the complaint.

On March 22, 2005, defendants filed a motion to stay all counts of the complaint except count VII on the basis that the ultimate facts in the Dunn lawsuit overlapped with the ultimate facts in the present lawsuit. Defendants pointed out that the basis for rescission in counts II and III of the complaint involved facts related to defendants' coverage of Dunn. Defendants also noted that counts IV, V, and VI claimed that plaintiffs owed no coverage for portions of the claims of the Dunn lawsuit and thus were contingent on the outcome of the Dunn lawsuit. Regarding count I, which alleged that defendants falsely claimed on their insurance application not to have underwritten any business between June 8, 2002, and August 4, 2003, defendants averred that, in order to determine whether defendants' application claim was actually false, the court would have to "determine what [defendants] did to place the Dunn insurance policies, *** what representations [defendants] made to Dunn and [defendants'] intent in making those representations." We note, however, that count I of the complaint made no reference to any relationship with Dunn, nor did it make any reference to a need to show intent. Indeed, in their response to defendants' motion to stay, plaintiffs explained that "Count I of the Complaint does not rely upon any allegation of fact regarding the Dunn Lawsuit, or the placement of insurance for Dunn." (Emphasis in original.) In their reply, defendants argued that their coverage of Dunn occurred between

October 2002 and June 2003, and thus they covered Dunn for some part of the range between June 8, 2002, and August 4, 2003. Based on that, defendants concluded that the issue of whether defendants " 'underwrote' the five policies for Dunn directly bears on [plaintiffs'] claim for rescission as alleged in Count I." On May 12, 2005, in a written order, the trial court granted defendants' motion to stay the first six counts of the complaint. The trial court subsequently granted plaintiffs' motion for partial summary judgment on count VII of the complaint,[1] and defendants timely appealed. We do not see any connection between count I and the Dunn lawsuit that would have warranted the stay of count I, but that issue has not been raised. We note this because resolution of count I would moot the only question before us, which is whether an insurer's duty to defend continues during the pendency of a claim for rescission of the contract of insurance.

Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. State Farm Insurance Co. v. American Service Insurance Co., 332 Ill. App. 3d 31, 36 (2002). The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered. American Service Insurance

---

[1]Count VII of the complaint sought a declaration that plaintiffs owed no duty to defend, but plaintiffs' partial summary judgment motion sought a declaration that there was no current duty to defend defendants.

Co., 332 Ill. App. 3d at 36. Here, no issue of fact was raised, and the sole issue on appeal is whether the trial court correctly ruled that plaintiffs were entitled as a matter of law to a declaration that they had no duty to defend before the resolution of the pending rescission suit. Our review of this question of law is de novo. American Service Insurance Co., 332 Ill. App. 3d at 36.

Plaintiffs rely (and the trial court relied) heavily on our supreme court's decision in State Farm Fire & Casualty Co. v. Martin, 186 Ill. 2d 367 (1999). In Martin, the defendant, who had participated in an arson scheme, tendered his insurer defense of a wrongful death claim in connection with the arson. Martin, 186 Ill. 2d at 369. The insurer, citing the arson, denied coverage, refused to defend the defendant, and filed a complaint seeking a declaration that it owed the defendant no duty to defend or indemnify. Martin, 186 Ill. 2d at 369. On August 8, 1995, the trial court in the wrongful death action entered a default judgment against the defendant. Martin, 186 Ill. 2d at 370. On August 30, the trial court in the declaratory judgment action denied the insurer's motion for summary judgment, and, on October 4, it granted summary judgment in favor of the defendant. Martin, 186 Ill. 2d at 370. The insurer appealed, and the appellate court affirmed. Martin, 186 Ill. 2d at 370.

Our supreme court reversed the lower court holdings. It rejected the argument that the insurer was estopped from denying coverage because it breached its duty to defend the defendant. Martin, 186 Ill. 2d at 371-74. Instead, it held that an insurer taking the position that a complaint potentially alleging coverage is actually not covered under the insurance policy has two separate and distinct options: either the insurer may defend the suit under a reservation of rights, or it may seek a declaratory judgment that there is no coverage. Martin, 186 Ill. 2d at 373. Thus, pursuant to the supreme court's ruling in Martin, an

insurer's duty to defend is suspended upon its filing for a declaratory judgment that there is no coverage.

Defendants attempt to distinguish the rule in Martin by noting that there the supreme court addressed only the issue of whether the insurer was estopped from later denying coverage to the insured because it had filed a declaration that it owed no coverage instead of defending the insured under a reservation of rights. Defendants correctly recite part of the holding in Martin, but they overlook its holding that an insurer may opt to file a declaratory judgment action instead of defending the insured and thus suspend the duty to defend pending the resolution of the declaratory judgment action.

Defendants take the position that an insurer must secure a judicial finding of rescission before it can stop defending. This is precisely the view of the dissenting opinion in Martin. Martin, 186 Ill. 2d at 378 (Harrison, J., dissenting) (an insurer must "secure a declaratory judgment as to its rights" (emphasis added) or defend its insured).

Defendants state that "Illinois case law is clear that *** once a duty to defend is determined [in the insured's favor] in a declaratory judgment proceeding, the insurer must defend the insured." (Emphasis added.) This seems to undercut defendants' argument. Defendants want there to be an "immediate" duty to defend during the pendency of the declaratory judgment action as opposed to "once a duty to defend is determined in the declaratory judgment proceeding." Second, defendants note that, "[i]n cases where the underlying action has terminated by the time that the defense obligation is terminated, the insured is entitled to reimbursement of its defense costs." This statement actually supports plaintiffs' argument, because, in order to owe reimbursement of defense costs, the insurer must not have defended in the first place. Defendants also refer at least twice to an

"immediate" duty to defend. Again, these comments support plaintiffs' argument, because talking about an "immediate" duty to defend implies the existence of a nonimmediate duty to defend, i.e., one that may be suspended. Finally, defendants argue that this case should have been allowed to progress to the point of determining the duty to defend. We note that it was defendants who successfully sought the stay. In any event, regardless of the trial court's and our ruling, the defense issue cannot be adjudicated until the rescission claim is determined, because the defense issue ultimately hinges on the rescission claim. The issue here is not the ultimate question of whether plaintiffs owe a duty to defend--it is whether they owe a duty to act on their duty to defend before the resolution of the rescission claim.

Defendants cite General Star Indemnity Co. v. Lake Bluff School District No. 65, 354 Ill. App. 3d 128 (2004), to say that "merely filing a declaratory judgment action does not satisfy or eliminate" the duty to defend. This point is doubtless true, but the question here is not whether the duty to defend has been satisfied, but rather whether the insurer's duty to act on the duty to defend may be suspended pending resolution of the declaratory judgment action brought to determine if the duty to defend exists in the first place. Of course, if the insurer is unsuccessful in seeking rescission, it will owe a duty to defend both going forward and for the period when the duty to defend was suspended.

Defendants characterize our decision in Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 359 Ill. App. 3d 872 (2005), as limiting the reach of the supreme court's holding in Martin. However, the issue in Valley Forge Insurance Co. was whether the insurer should be required to advance defense costs pending its appeal of the trial court's

ruling that the insurer owed a duty to defend. Valley Forge Insurance Co., 359 Ill. App. 3d at 890. Here, there has been no ruling that plaintiffs owe defendants a duty to defend.

In pressing their argument, defendants quote two passages from Valley Forge Insurance Co. First, defendants quote the passage saying that " ' "[the insurer] remained obligated to defend [its insured] so long as there remained any question as to whether the underlying claims were covered by the policies." ' " Valley Forge Insurance Co., 359 Ill. App. 3d at 890, quoting General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 165 (2005), quoting Liberty Mutual Insurance Co. v. FAG Bearings Corp., 153 F.3d 919, 924 (8th Cir. 1998). However, as noted, the question regarding coverage under the policy was an issue on appeal after the trial court had already ruled that the insurer owed a duty to defend. Second, defendants quote the passage saying that "an insurer may not define its duty to defend based upon the outcome of a declaratory judgment action." Valley Forge Insurance Co., 359 Ill. App. 3d at 890, citing General Agents Insurance Co., 215 Ill. 2d at 165. However, the quoted language refers to the holding in General Agents Insurance Co. that an insurer cannot recover defense costs by claiming a right to reimbursement in a reservation of rights letter or a declaratory judgment action where no such right existed under the original insurance contract. General Agents Insurance Co., 215 Ill. 2d at 160-65. Thus, put in context, neither passage is applicable to the issue in the current case.

Defendants also cite several cases from outside jurisdictions holding that an insured must secure a declaration that it does not owe a duty to defend before it can refuse to defend its insured. See Federal Insurance Co. v. Kozlowski, 18 A.D. 33, 792 N.Y.S.2d 397 (2005); In re Worldcom, Inc. Securities Litigation, 354 F. Supp. 2d 455 (S.D.N.Y. 2005);

Associated Electric & Gas Insurance Services, Ltd. v. Rigas, 382 F. Supp. 2d 685 (E.D. Penn. 2004); National Union Fire Insurance Co. of Pittsburgh v. Brown, 787 F. Supp. 1424 (S.D. Fla. 1991); Hoechst Celanese Corp. v. National Union Fire Insurance Co. of Pittsburgh, Civ. A. No. 89C--SE--358 (Del. Super. 1994) (unpublished). However, as plaintiffs note, decisions by courts from other states are not binding on courts of this state. Skipper Marine Electronics, Inc. v. United Parcel Service, Inc., 210 Ill. App. 3d 231, 239 (1991). Therefore, to the extent defendants' foreign cases espouse a rule different from that stated in Martin, we find those cases unpersuasive.

Defendants argue that applying the Martin rule in the instant case would be unfair, because allowing an insurer to refuse to defend based on the mere assertion of a basis to rescind the contract would deprive insureds of "protection from financial harm that insurance policies are presumed to give." We disagree. As defendants note in their reply brief, once a court has ruled that an insurer breached its duty to defend, the insurer will be liable to its insured for defense costs. General Star Indemnity Co., 354 Ill. App. 3d at 128. Thus, should the insurer ultimately fail in its declaratory judgment action (and thus have its assertion of grounds for rescission deemed unfounded), it may be liable for the cost of the defense it should have provided during the period of suspension. Should the insurer ultimately succeed in its declaratory judgment action, then, obviously, it will bear no responsibility for defending its insured.

Defendants' concern that the above holding provides incentive for insurers to put forth baseless accusations as a pretense to filing declaratory judgment actions for noncoverage, and thus to suspend the duty to defend, is misguided. Aside from the fact that such an insurer may be held liable for all the defense costs it should have paid once

the declaratory judgment action is adjudicated, insurers take two additional risks in adopting the posture defendants describe. First, an insurer that is found to have denied a defense vexatiously may be assessed a penalty beyond its liability based on the insurance contract. 255 ILCS 5/155 (West 2004). Second, an insurer that opts to file for a declaration that it owes no defense, as opposed to defending the insured under a reservation of rights, trades the burden of initially providing the cost of the defense for the ability to protect the insurer's potential interest in the underlying litigation. See General Agents Insurance Co., 215 Ill. 2d at 163, quoting Terra Nova Insurance Co. v. 900 Bar, Inc., 887 F.2d 1213, 1219 (3d Cir. 1989) (" 'Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify' "). Further, the situation of the parties in this case does not dictate that we depart from our holding as a matter of equity. As the trial court noted:

> "I sit here as a court of equity, and if there were compelling circumstances brought to my attention, which there were not in this case, of extreme financial circumstances which may exist in an individual policy, *** then I think that the *** rules as set forth here could have some variation."

Indeed, despite defendants' protestations, our holding today is consistent with well-established principles of insurance law. Generally, when an insurance company asserts that a claim against an insured falls outside the insurance policy, the insurer is presented with an "urgent strategical problem." Apex Mutual Insurance Co. v. Christner, 99 Ill. App. 2d 153, 160 (1968). An insurer may, of course, elect to assume the defense of its insured notwithstanding its doubts as to its duty to defend. However, an insurer so doing is

afterwards estopped from denying its own liability under the policy, because the insurer has prejudiced the insured's right to control his or her own defense by inducing the insured to rely on the insurer for a defense instead of seeking other counsel. Apex Mutual Insurance Co., 99 Ill. App. 2d at 161-62.

An insurer electing not to follow this path has three available solutions. Insurance Co. of Illinois v. Markogiannakis, 188 Ill. App. 3d 643, 652 (1989), quoting Maneikis v. St. Paul Insurance Co., 655 F.2d 818, 821 (7th Cir. 1981). " 'The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action; (2) defend the insured under a reservation of rights[;] or (3) refuse either to defend or to seek a declaratory judgment ***.' " Markogiannakis, 188 Ill. App. 3d at 652, quoting Maneikis, 655 F.2d at 821.

An insurer chooses the last option at its own peril, because, if it is later found to have wrongfully denied a defense to its insured, it will have breached its insurance contract. Markogiannakis, 188 Ill. App. 3d at 652, quoting Maneikis, 655 F.2d at 821. This breach results in the insurer being estopped from asserting any defense based on noncoverage, because "the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit *** when it has already breached the contract by violating the provisions inuring to the benefit of the insured." Sims v. Illinois National Casualty Co. of Springfield, 43 Ill. App. 2d 184, 197 (1963). Further, the insurer will be collaterally estopped in any subsequent suit as to all issues that were decided in the underlying action. Apex Mutual Insurance Co., 99 Ill. App. 2d at 161.

An insurer opting to defend its insured under a reservation of rights, on the other hand, avoids estoppel in a subsequent policy suit because it forestalls the insured's claim

that he or she was prejudiced by the insurer's conflict of interest or monopolization of the defense. Royal Insurance Co. v. Process Design Associates, Inc., 221 Ill. App. 3d 966, 973 (1991). Likewise, an insurer opting to pursue a declaration that it owes no duty to defend avoids the estoppel that would arise out of its simply " 'stand[ing] on the sidelines and wait[ing] until the [underlying] action is completed before contesting the question of coverage' " (Markogiannakis, 188 Ill. App. 3d at 650, quoting Reis v. Aetna Casualty & Surety Co. of Illinois, 69 Ill. App. 3d 777, 782 (1978)), because, by exercising that option, the insurer that erroneously denied coverage will not have acted inequitably (Markogiannakis, 188 Ill. App. 3d at 652, quoting Clemmons v. Travelers Insurance Co., 88 Ill. 2d 469, 479 (1981)).

Thus, the filing of the declaratory judgment action is simply a means for the insurance company to avoid the estoppel in a subsequent suit to determine whether the insured is covered under the policy,[2] and an insurer alleging a policy defense against its insured, just like an insurer seeking rescission, is under no obligation to act on its alleged duty to defend until after the declaratory judgment action. An insurer of course has the option of paying the costs of defense upfront under a reservation of rights, but it also has the option of filing a declaratory judgment action and waiting to act until after its policy

---

[2]This formulation is also consistent with the statement that an insurer has two distinct options: defending under a reservation of rights or filing a declaratory action. If an insurer were obligated to act on its duty to defend during the pendency of the declaratory judgment action, then that option would not differ from the insurer's tendering a defense under a reservation.

obligations are determined, at which time the insurer may be liable to reimburse the insured for any costs of defense the insurer should have paid. The law is no different where the insurer seeks rescission.

For the foregoing reasons, we hold that the duty of an insurer to act on its duty to defend its insured under an insurance contract is suspended pending an action for rescission of the contract. Accordingly, we hold that the trial court did not err in granting summary judgment to plaintiffs on this issue.

Affirmed.

BOWMAN and KAPALA, JJ., concur.