Nos. 2--06--0825 & 2--06--0889 cons.   Filed:  11-30-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ECLIPSE MANUFACTURING COMPANY, an Illinois Corporation, Individually and on Behalf of Members of a Certified Class, as Assignee, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff and Third-Party Citation Petitioner-Appellee and Cross-Appellant, | ) ) ) ) ) | |
| v. | ) ) | No. 03--CH--922 |
| UNITED STATES COMPLIANCE COMPANY, d/b/a United States Compliance Corporation, a Minnesota Corporation, | ) ) ) ) | |
| Defendant | ) ) | |
| (Hartford Casualty Insurance Company, an Indiana Corporation, Third-Party Citation Respondent-Appellant and Cross-Appellee). | ) ) ) | Honorable Michael J. Fritz, Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Eclipse Manufacturing Company (Eclipse) filed a class action suit against United States Compliance Company (U.S. Compliance) in Lake County circuit court.  The three-count complaint was based on the allegation that U.S. Compliance had faxed advertisements to Eclipse and other businesses without first obtaining their permission.  U.S. Compliance had previously purchased commercial general liability insurance policies from Hartford Casualty Insurance Company (Hartford).  U.S. Compliance asked Hartford to defend the suit and cover any liability under the policies.

Hartford declined to defend U.S. Compliance and denied coverage without seeking a declaratory judgment regarding its obligations.

Eclipse settled its claims against U.S. Compliance for an assignment of the policies' limits, and the trial court entered a consent judgment against U.S. Compliance. Eclipse then filed a third-party citation against Hartford to discover assets and collect the policy proceeds on behalf of the class. In its defense, Hartford invoked policy defenses, and Eclipse responded that Hartford was estopped from relying on the policy defenses when it declined to defend U.S. Compliance in the underlying suit or file a declaratory judgment action. The trial court entered a final judgment finding that the insurance policies obligated Hartford to pay the settlement. The court further held that postjudgment interest for Eclipse would accrue from the date of the judgment against Hartford, not the earlier consent judgment against U.S. Compliance.

Hartford appeals, arguing that its policy defenses are not barred by estoppel and that the policies do not cover U.S. Compliance's conduct. Specifically, Hartford argues that (1) the laws of estoppel conflict between Minnesota and Illinois and the trial court should have applied Minnesota law rather than Illinois law; (2) under Minnesota law, Hartford's breach of its duty to defend the underlying suit does not bar Hartford from raising its policy defenses in the citation proceeding; (3) the Hartford policies do not provide coverage under Minnesota law; and (4) even if Illinois law applies, the policies do not provide coverage. Eclipse disputes these positions and also cross-appeals, arguing that the trial court erred by not including postjudgment interest accruing from the date of the consent judgment against U.S. Compliance.

We affirm the judgment, holding that (1) the Illinois law of estoppel applies to this case because the laws of Minnesota and Illinois do not conflict; (2) the principle of estoppel bars Hartford

from raising its policy defenses; and (3) the trial court correctly awarded postjudgment interest accruing from the date of the judgment against Hartford rather than the earlier judgment against U.S. Compliance.

FACTS

On June 13, 2003, Eclipse filed the class action complaint against U.S. Compliance, which was served on July 28, 2003. The three-count complaint stated claims for violations of the federal Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. §227 et seq. (2000)), for common-law conversion, and for unfair practice in violation of the Illinois Consumer Fraud sand Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/1 et seq. (West 2006)). The complaint was based on the central allegation that U.S. Compliance had sent "blast faxes," which are unsolicited advertisements sent via facsimile transmission. Eclipse alleged that the faxes caused actual damage to the recipients by using their equipment, paper, and toner without permission. Eclipse also alleged statutory damages of $500 for each violation under the TCPA. Discovery revealed that, between May 2002 and July 2002, U.S. Compliance caused approximately 90,000 fax advertisements to be sent to 15,000 persons from whom it had not obtained express permission or invitation.

Three days after being served with the complaint, U.S. Compliance served Hartford with a copy of the complaint and a demand for a defense based on its commercial general liability insurance policies. On August 19, 2003, Hartford responded with a letter denying a duty to defend the suit or cover any liability. Hartford denied coverage under the "property damage" provision of the policies, on the theory that the complaint did not allege an "accident." Hartford also denied coverage for "personal and advertising injury" under the policy, on the theory that the TCPA and Fraud Act violations are not within the policies' definition of a personal or advertising injury and the complaint

did not allege any unintentional acts. U.S. Compliance sent Hartford another letter demanding coverage on August 25, 2003, and Hartford reiterated its denial.

On January 20, 2005, after approximately one year of negotiations, Eclipse and U.S. Compliance reached an agreement and moved for preliminary approval of the proposed class settlement. According to the parties to the settlement, U.S. Compliance faced exposure of $100 million and bankruptcy if it lost on the merits. Eclipse believed that, if the litigation continued, U.S. Compliance would likely file for bankruptcy protection, barring the class members from recovering anything from the liquidation. In light of these circumstances, U.S. Compliance assigned to the class its rights under the policies issued by Hartford. The parties agreed to settle the claims for $3,999,999.98, which was nearly the limit of the insurance policies.

Following a hearing involving Eclipse and U.S. Compliance, the trial court preliminarily approved the class action settlement. The court scheduled a final approval hearing, allowing for notification of the class members. On June 30, 2005, the trial court approved the class settlement, subject to submission and approval of a final written order, which was entered on July 12, 2005. The settlement provided that the judgment was to be collectible only against U.S. Compliance's insurers, including Hartford.

On August 23, 2005, Eclipse, as representative of the class, filed a third-party citation proceeding against Hartford to discover assets and collect on the U.S. Compliance policies. Hartford removed the citation proceeding to federal court, but the federal court remanded the cause to the circuit court of Lake County for lack of jurisdiction.

On January 19, 2006, Hartford filed a declaratory judgment action against Eclipse in Minnesota state court. Hartford subsequently argued in the circuit court of Lake County that the

Minnesota action warranted a stay or dismissal of the Illinois action. Eventually, the Minnesota court dismissed the declaratory judgment action for lack of subject matter and personal jurisdiction, and the Illinois action resumed.

On July 25, 2006, the circuit court of Lake County heard argument and stated that it would rule in favor of Eclipse. The court directed the parties to prepare draft orders incorporating the court's comments, but Eclipse and Hartford could not agree on the language. They submitted proposed orders to the court on July 28, 2006. Although the court expressly stated that it had not yet entered a final order, Hartford filed what it calls a "protective" notice of appeal on August 22, 2006. We docketed the cause under No. 2--06--0825.

On August 25, 2006, the trial court entered a final judgment against Hartford. The court ordered Hartford to pay Eclipse, as representative of the class, $3,999,999.98, $120 in costs, and statutory postjudgment interest accruing from the July 25, 2006, ruling. Hartford filed a second notice of appeal on September 7, 2006, and Eclipse's cross-appeal followed. We docketed the second appeal under No. 2--06--0889 and consolidated it with No. 2--06--0825.

ANALYSIS

A. Jurisdiction

We first determine our jurisdiction over the consolidated appeals. "[A] reviewing court has a duty to consider sua sponte its jurisdiction and to dismiss an appeal if jurisdiction is wanting." In re Marriage of Link, 362 Ill. App. 3d 191, 192 (2005). Without differentiating between the appeals, Hartford argues that "[j]urisdiction of the Illinois Appellate Court, Second District, is conferred by Illinois Supreme Court Rule 303(a) [Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a), eff. May 1, 2007]." From Rule 303(a) we infer that Hartford also wishes to invoke Supreme

Court Rule 301 (155 Ill. 2d R. 301), which provides for appeal as a matter of right from final judgments. See Link, 362 Ill. App. 3d at 192.

At the time Hartford filed its first notice of appeal on August 22, 2006, Rule 303(a)(1) provided that "the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion." (Emphasis added.) 155 Ill. 2d R. 303(a).

" ' "A final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." ' " Link, 362 Ill. App. 3d at 192-93, quoting In re M.M., 337 Ill. App. 3d 764, 771 (2003), quoting In re Adoption of Ginnell, 316 Ill. App. 3d 789, 793 (2000). "An order is not final if jurisdiction is retained for matters of substantial controversy." Link, 362 Ill. App. 3d at 192-93.

On July 25, 2006, the circuit court of Lake County heard argument on the third-party citation and stated that it would rule for Eclipse and against Hartford. The court directed the parties to prepare draft orders incorporating the court's comments, but Eclipse and Hartford could not agree on the language. Although the court expressly stated that it had not yet entered a final order, Hartford filed what it calls a "protective" notice of appeal on August 22, 2006.

Under the former Rule 303(a)(1), the circuit court's July 25, 2006, order was not a final order for purposes of Rule 301, because the court had not settled on the precise language of the judgment. Therefore, one could argue that under the former Rule 303(a)(1), Hartford's "protective" notice of

appeal was premature, which would warrant dismissal of appeal No. 2--06--0825 for lack of appellate jurisdiction.

However, during the pendency of the appeal, the supreme court amended Rule 303(a)(1) to add the provision that "[a] notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a), eff. May 1, 2007. The amendment addresses Hartford's protective notice of appeal precisely, such that the new Rule 303(a)(1) would confer jurisdiction over appeal No. 2--06--0825.

While we would lack jurisdiction over appeal No. 2--06--0825 pursuant to the former Rule 303(a)(1), the new Rule 303(a)(1) would confer jurisdiction. Therefore, we must determine which version applies. This court has recently determined that similar amendments to Rule 303(a)(2) apply retroactively to appeals pending on the effective date of the amendments. In re Marriage of Duggan, No. 2--06--0061, slip op. at 12 (October 16, 2007). In the interest of consistency, we follow Duggan, apply the new Rule 303(a)(1) retroactively, and conclude that we have jurisdiction over appeal No. 2--06--0825 because the August 22, 2006, "protective" notice of appeal is treated as filed on August 25, 2006, the date on which the final judgment was entered.

Next we consider our jurisdiction over the second, consolidated appeal. The trial court entered a final judgment, including statutory interest, against Hartford on August 25, 2006, and Hartford filed a second notice of appeal on September 7, 2006. The order was a final judgment because it fixed absolutely the rights of Eclipse and Hartford, and the notice of appeal was timely because it was filed within 30 days. Therefore, we also have jurisdiction to consider appeal No. 2--06--0889. Parenthetically, we note that, even if there were some question as to our jurisdiction over

appeal No. 2--06--0825, we could decide the merits of the case because there can be no dispute that we have jurisdiction over appeal No. 2--06--0889.

### B. Estoppel of Policy Defenses

The appeal and cross-appeal focus on the turnover order entered for Eclipse and against Hartford. Section 2--1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2--1402 (West 2006)) provides a mechanism by which a judgment creditor may initiate supplementary proceedings, against a judgment debtor or a third party, to discover the assets of a judgment debtor and apply those assets to satisfy an underlying judgment. 735 ILCS 5/2--1402 (West 2006); Bloink v. Olson, 265 Ill. App. 3d 711, 714 (1994). The proceedings may be initiated only after the circuit court enters an underlying judgment. Specifically, section 2--1402 allows "[a] judgment creditor *** to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment." 735 ILCS 5/2--1402 (West 2006).

Section 2--1402 is to be liberally construed, and the statute gives the trial court broad powers to compel the application of discovered assets or income to satisfy a judgment. Bentley v. Glenn Shipley Enterprises, Inc., 248 Ill. App. 3d 647, 651 (1993). Also, Supreme Court Rule 277 provides that a supplementary proceeding authorized by section 2--1402 "may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor" and that "[t]he supplementary proceeding shall be commenced by the service of a citation on the party against whom it is brought." 134 Ill. 2d Rs. 277(a), (b).

Inexplicably, the parties fail to address our standard of review for the turnover order Eclipse obtained under section 2--1402. Recently, our supreme court employed the de novo standard when

reviewing a turnover order where the circuit court had relied on the parties' oral argument and the record without conducting an evidentiary hearing or making any findings of fact. Dowling v. Chicago Options Associates, Inc., No. 102578, slip op. at 5 (May 3, 2007). The turnover order in this case, likewise, did not require factual findings or credibility determinations, and therefore we review it de novo.

On appeal, Hartford argues that the turnover order must be reversed because the policies do not cover U.S. Compliance's transmission of the unsolicited faxes. Eclipse responds that Hartford is estopped from raising the policy defenses because Hartford breached its duty to defend U.S. Compliance in the underlying suit. Hartford does not dispute that it breached the duty to defend U.S. Compliance under the policies. Instead, Hartford asserts that (1) the laws of estoppel conflict between Minnesota and Illinois and the trial court should have applied Minnesota law rather than Illinois law; (2) under Minnesota law, Hartford's breach of its duty to defend the underlying suit does not bar Hartford from raising its policy defenses in the citation proceeding; (3) the Hartford policies do not provide coverage under Minnesota law; and (4) even if Illinois law applies, the policies do not provide coverage. We conclude that the relevant laws of estoppel in Minnesota and Illinois do not conflict to create different outcomes. Therefore, we follow the law of the forum state, Illinois, and hold that Hartford is estopped from raising its policy defenses. We affirm the turnover order without addressing whether Hartford's policy defenses are meritorious.

Initially, we summarize the well-settled Illinois law that relates to the rights of an insurer when its insured tenders defense of a lawsuit. "Generally, when an insurance company asserts that a claim against an insured falls outside the insurance policy, the insurer is presented with an 'urgent strategic[] problem.' [Citation.]" Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency,

Inc., 364 Ill. App. 3d 975, 982 (2006). An insurer may elect to assume the defense of its insured notwithstanding its doubts as to its duty to defend. However, when an insurer elects to defend the suit, it is estopped later from denying its own liability under the policy because the insurer has prejudiced the insured's right to control his or her own defense by inducing the insured to rely on the insurer for a defense instead of seeking other counsel. Lloyd's, 364 Ill. App. 3d at 982.

An insurer that denies its own liability under the policy has three alternatives: " ' "(1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action; (2) defend the insured under a reservation of rights[;] or (3) refuse either to defend or to seek a declaratory judgment." ' [Citations.]" Lloyd's, 364 Ill. App. 3d at 982.

"An insurer chooses the last option at its own peril, because, if it is later found to have wrongfully denied a defense to its insured, it will have breached its insurance contract." Lloyd's, 364 Ill. App. 3d at 982. The breach causes the insurer to be estopped from asserting any defense based on noncoverage, because " 'the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit *** when it has already breached the contract by violating the provisions inuring to the benefit of the insured.' " Lloyd's, 364 Ill. App. 3d at 983, quoting Sims v. Illinois National Casualty Co. of Springfield, 43 Ill. App. 2d 184, 197 (1963). "Further, the insurer will be *** estopped in any subsequent suit as to all issues that were decided in the underlying action." Lloyd's, 364 Ill. App. 3d at 983.

The estoppel doctrine is deeply rooted in Illinois jurisprudence. "It arose out of the recognition that an insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract. [Citation.] Although the doctrine also has roots in the principle of equitable estoppel, *** it has since developed into a

distinct doctrine that stands on its own." Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 151 (1999).

"An insurer opting to defend its insured under a reservation of rights *** avoids estoppel in a subsequent policy suit because it forestalls the insured's claim that [he] was prejudiced by the insurer's conflict of interest or monopolization of the defense." Lloyd's, 364 Ill. App. 3d at 983. "Likewise, an insurer opting to pursue a declaration that it owes no duty to defend avoids the estoppel that would arise out of its simply ' "stand[ing] on the sidelines and wait[ing] until the [underlying] action is completed before contesting the question of coverage" ' [citations], because, by exercising that option, the insurer that erroneously denied coverage will not have acted inequitably [citations]." Lloyd's, 364 Ill. App. 3d at 983.

"Thus, the filing of a declaratory judgment action is simply a means for the insurance company to avoid the estoppel in a subsequent suit to determine whether the insured is covered under the policy, and an insurer alleging a policy defense against its insured, just like an insurer seeking rescission, is under no obligation to act on its alleged duty to defend until after the declaratory judgment action. An insurer of course has the option of paying the costs of defense up front under a reservation of rights, but it also has the option of filing a declaratory judgment action and waiting to act until after its policy obligations are determined, at which time the insurer may be liable to reimburse the insured for any costs of defense the insurer should have paid. The law is no different where the insurer seeks rescission." Lloyd's, 364 Ill. App. 3d at 983.

In this case, U.S. Compliance alerted Hartford of the pending class action suit within three days of receiving service, and U.S. Compliance requested Hartford to defend the suit. Hartford does not allege that U.S. Compliance inadequately tendered the defense. However, Hartford's analysis led

it to conclude that it did not owe a duty to defend or cover any potential liability. Hartford had the option of (1) seeking a declaratory judgment regarding its obligations; (2) defending U.S. Compliance under a reservation of rights; or (3) refusing either to defend or to seek a declaratory judgment. See Lloyd's, 364 Ill. App. 3d at 982. Hartford refused to defend the suit, and on appeal Hartford does not dispute that it breached the policies by doing so. Under Illinois law, the breach caused Hartford to be estopped from asserting any defense based on noncoverage, and Hartford is estopped in subsequent proceedings as to all issues decided in the underlying class action. See Lloyd's, 364 Ill. App. 3d at 982-83.

Hartford has invoked several policy defenses in the trial court and on appeal, but recognizing that its litigation strategy has caused it to be estopped from raising those defenses under Illinois law, Hartford seeks the safe harbor of the law of another jurisdiction, Minnesota. Hartford argues that Minnesota law should apply because U.S. Compliance is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota, and the officers and corporate offices of U.S. Compliance are located in Minnesota.

Hartford argues that courts in Minnesota and Illinois differ as to whether an insurer's breach of a duty to defend results in estoppel barring any policy defenses. Illinois follows the Restatement (Second) of Conflict of Laws in making choice-of-law decisions. Morris B. Chapman & Associates, Ltd. v. Kitzman, 193 Ill. 2d 560, 568 (2000). The Restatement provides that when, as in this case, the parties have not made an effective choice of law, the potentially relevant factors to choice of law in breach of contract cases are "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties," and

these factors are to be "evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws §188, at 575 (1971). In the context of insurance contracts, "the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship *** to the transaction and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws §193, at 610 (1971).

Hartford argues that the trial court erred in applying Illinois law to the estoppel issue, because Minnesota has a more significant relationship to the transaction and the parties. However, before we apply a choice-of-law analysis, we must first determine whether there is a conflict between the laws of the two states. Malatesta v. Mitsubishi Aircraft International, Inc., 275 Ill. App. 3d 370, 374 (1995). "There is a conflict if the difference in laws will result in a difference in outcome." Malatesta, 275 Ill. App. 3d at 374. Our review of a choice-of-law decision is de novo. Household International, Inc. v. Liberty Mutual Insurance Co., 321 Ill. App. 3d 859, 869 (2001). Here, the parties dispute whether the rules of estoppel in Minnesota and Illinois would result in different outcomes. We agree with Eclipse that any legal differences would not affect the outcome.

A recent Minnesota Supreme Court decision suggests that Minnesota would adopt Illinois's rule that an insurer that breaches its duty to defend is estopped from invoking policy defenses to coverage. In Home Insurance Co. v. National Union Fire Insurance of Pittsburgh, Pennsylvania, 658 N.W.2d 522 (Minn. 2003), Cargill attempted to recover from its insurers the cost of defending a patent infringement suit. Home Insurance, 658 N.W.2d at 524. The Minnesota Supreme Court was

faced with the issue of what constitutes a legal "tender of defense" sufficient to trigger an insurer's duty to defend. Home Insurance, 658 N.W.2d at 531.

The Minnesota Supreme Court held that "notice of suit is sufficient to tender a defense." Home Insurance, 658 N.W.2d at 532. The court stated, "[w]e agree with the supreme courts of Illinois, New Hampshire, and Wisconsin that sound public policy does not support a rule that requires insureds to expressly request a defense in order to trigger the duty to defend." Home Insurance, 658 N.W.2d at 532. Although dicta, the following portion of the opinion suggests that the Minnesota Supreme Court would also follow Illinois's rules of estoppel if deciding the issue presented in this case:

"Our holding encourages the prompt resolution of coverage disputes *** by clarifying when an insurer's duty to defend is triggered. [Citation.] Once the insurer's duty to defend is triggered, it must begin defending the suit or bring a declaratory action if it believes the policy does not cover the claim. [Citation.] Forcing the insurer to take one of these two steps as soon as it receives notice of a claim helps the parties move on with the underlying suit. Once an insurer receives notice of a suit, it is responsible for defending the insured unless the insured explicitly refuses the insurer an opportunity to defend." (Emphasis added.) Home Insurance, 658 N.W.2d at 533.

Thus, the Home Insurance court considered the strategic options of an insurer that denies its own liability: seek a declaratory judgment to establish policy obligations or defend the insured under a reservation of rights. By using words of compulsion--"must," "forcing," and "responsible"--when discussing an insurer's duty to pursue one of these options, the court implies that, in Minnesota, an insurer that refuses either to defend or to seek a declaratory judgment does so at its own peril,

because, if it is later found to have wrongfully denied a defense to its insured, it will have breached its insurance contract.

We predict that a Minnesota court would rule that an insurer may not breach its duty to defend without forfeiting its policy defenses in subsequent proceedings. If the Minnesota Supreme Court subscribed to the notion that an insurer may breach a duty to defend and still raise policy defenses after liability in the underlying suit is determined, the court would have stated that an insurer "may" accept the tender of defense or reject it. See Home Insurance, 658 N.W.2d at 533.

In Home Insurance, the Minnesota Supreme Court explicitly adopted the Illinois rule that providing notice of a suit sufficiently triggers an insurer's duty to defend. Home Insurance, 658 N.W.2d at 532. The case also implied that Minnesota would adopt Illinois's position that an insurer will be estopped from raising policy defenses if it does not defend the suit or file a declaratory action to determine its obligations under the policy. Home Insurance, 658 N.W.2d at 533.

Hartford cites two other Minnesota cases, but those are older and factually distinguishable from this case. In Brown v. State Automobile & Casualty Underwriters, 293 N.W.2d 822 (Minn. 1980), a baggage handler sued the insured for personal injuries sustained during an altercation, and the insurer declined to defend, on the ground that the incident was within the scope of the intentional acts exclusion of the homeowner's policy. Brown, 293 N.W.2d at 823. The insured unsuccessfully defended himself at his own expense, but later succeeded in obtaining a declaration that the insurer breached its duties to defend and indemnify. Brown, 293 N.W.2d at 823-24.

The insurer appealed, successfully asserting that, because a determination of coverage under the policy was not necessary in the underlying suit, the insurer was not collaterally estopped from arguing that it had no duty to indemnify. Brown, 293 N.W.2d at 825. The court observed that

-15-

"[c]ollateral estoppel precludes the relitigation of issues which are identical to issues actually litigated in a previous action." Brown, 293 N.W.2d at 825. Thus, Brown considered the application of collateral estoppel principles, which are arguably distinct from the equitable principles on which the Illinois rule barring policy defenses is based. See Ehlco, 186 Ill. 2d at 151 ("the doctrine *** has roots in the principle of equitable estoppel"). The Brown court did not consider the equitable policy considerations later emphasized by Ehlco in Illinois and Home Insurance in Minnesota. The Brown court addressed the duty to indemnify independently of the duty to defend, but we conclude that Home Insurance more accurately reflects the law of Minnesota today.

Hartford also cites Shannon v. Great American Insurance Co., 276 N.W.2d 77 (Minn. 1979), where the owners of a building, which was destroyed by fire, sued their insurer for coverage. The Minnesota Supreme Court held that "the doctrine of estoppel may not be used to enlarge the coverage of an insurance policy." Shannon, 276 N.W.2d at 78. In this case, Eclipse does not attempt to recover beyond the limits of U.S. Compliance's policies. Moreover, the insureds in Shannon did not allege that the insurer breached or even owed a duty to defend, and therefore it is distinguishable from this case on the facts.

Finally, Hartford cites Flannery v. Allstate Insurance Co., 49 F. Supp. 2d 1223 (D. Colo. 1999), in which the United States District Court for the District of Colorado cited Alton M. Johnson Co. v. M.A.I. Co., 463 N.W.2d 277 (Minn. 1990), in a long string cite for the proposition that Minnesota permits an insurer to invoke policy defenses after breaching its duty to defend. Flannery, 49 F. Supp. 2d at 1227-28. In fact, Alton addressed whether an insurer had a right to a jury trial on the issue of the reasonableness of a settlement negotiated by the insured when the insurer had not participated in the defense of the underlying action. We agree with Eclipse that Flannery cited Alton

inaccurately. In any event, <u>Alton</u> predates <u>Home Insurance</u> in which the Minnesota Supreme Court indicated its preference for the Illinois rule that an insurer is estopped from raising policy defenses if it breaches its duty to defend the insured.

### C. Judgment Interest Statute

The trial court ordered Hartford to pay statutory interest accruing from July 25, 2006, the date on which the court ruled against Hartford on the citation. On cross-appeal, Eclipse argues that the interest should have begun accruing a year earlier, when the trial court entered final approval of the settlement against U.S. Compliance on July 12, 2005. Eclipse calculates the interest that it was denied from July 12, 2005, to July 25, 2006, to be $372,822.

In the policies, Hartford agreed to cover interest on a judgment as follows:

"All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limit insurance. Any amounts paid *** will not reduce the Limits of Insurance."

The parties agree that section 2--1303 of the Code prescribes the rate and effective dates for calculating interest that Hartford must pay under the policies. When reviewing a statute, the cardinal rule is to ascertain and give effect to the intent of the legislature. The plain meaning of the language in the statute provides the best indication of legislative intent. "Where the statutory language is clear, the court must give it effect without resorting to other aids for construction." <u>Puleo v. Topel</u>, 368 Ill. App. 3d 63, 67 (2006).

Section 2--1303 of the Code provides in relevant part as follows:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." 735 ILCS 5/2--1303 (West 2006).

Interest under section 2--1303 "merely preserves the value of the liquidated obligation by compensating the judgment creditor for delays in payment." Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co., 157 Ill. 2d 282, 295 (1993). In other words, interest "is neither a penalty nor a bonus, but instead a preservation of the economic value of an award from diminution caused by delay." Illinois State Toll, 157 Ill. 2d at 301. Moreover, the application of interest under section 2--1303 is mandatory, so that a trial court has no discretion to refrain from imposing interest upon a money judgment. Browning, Ektelon Division v. Williams, 348 Ill. App. 3d 830, 833 (2004). The interest imposed under section 2--1303 is directly connected to the enforcement of the judgment, preventing the judgment debtor from benefitting from retention of the money judgment and providing the judgment debtor an incentive to pay the judgment promptly.

The supreme court recently reviewed a ruling regarding section 2--1303 where "the pertinent facts [were] undisputed and the issues raised [were] purely legal." Tri-G, Inc. v. Burke, Bosselman & Weaver, 222 Ill. 2d 218, 254 (2006). The court stated, " '[i]f the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a court of review may determine the correctness of the ruling independently of the trial court's judgment.' " Tri-G, 222 Ill. 2d at 254, quoting Norskog v. Pfiel, 197 Ill. 2d 60, 70-71 (2001). We review de novo the trial court's decision regarding section 2--1303 because the issues presented are purely legal.

Eclipse argues that it is entitled to "postjudgment" interest accruing after July 12, 2005, because the order entered on that date qualifies as a "judgment" under section 2--1303. Hartford responds that the final approval of the settlement entered on July 12, 2005, is essentially a settlement and not an "award, report or verdict," and therefore postjudgment interest did not begin accruing upon its entry. Like the parties, courts generally have referred to any interest awarded under section 2--1303 as "postjudgment interest," but that is inaccurate. The supreme court has attempted to explain the terms of section 2--1303 as follows:

> "To avoid possible confusion over terminology, we have adopted in this opinion the term 'judgment interest statute' to generally refer to section 2--1303. This provision, formerly the Interest Act, provides for interest to accrue on awards, reports, and verdicts as well as judgments. Interest that accrues on reports, awards, and verdicts may be viewed as a form of 'prejudgment' interest to distinguish it from the interest that accrues on the judgment itself ('post-judgment' interest)." Illinois State Toll, 157 Ill. 2d at 296 n.1.

There is no dispute that section 2--1303 entitles Eclipse to postjudgment interest accruing after July 25, 2006, the date on which the court ruled against Hartford on the citation. However, if Eclipse is entitled to additional interest from July 12, 2005, to July 25, 2006, it would be prejudgment interest on an award, report, or verdict. Hartford argues that Eclipse is not entitled to such interest under Lorts v. Illinois Terminal R.R., 80 Ill. App. 3d 974 (1980), in which the Appellate Court, Fifth District, ruled that a consent judgment, which incorporated a settlement, did not qualify as "an award, report or verdict" under section 2--1303.

We decline to depart from Lorts, as Eclipse advocates. Eclipse attempts to distinguish Lorts from this case, arguing that "Lorts does not control this case because Lorts involved the settlement

of an individual personal injury case, while this case involved the settlement of a class action." We view the distinction as one without a difference.

Our supreme court has acknowledged the viability of Lorts, noting that "[s]ome courts have held that, to qualify as an award, report, or verdict subject to the accrual of interest before judgment, the sum in question must be the result of an actual adjudication, *** as distinct from the parties' stipulation or settlement agreement." Illinois State Toll, 157 Ill. 2d at 300-01, citing Lorts, 80 Ill. App. 3d at 978-80; Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co., 508 F.2d 283, 296 (7th Cir. 1974). Consistent with Lorts, we conclude that Eclipse is not entitled to prejudgment interest from July 12, 2005, the date of the consent judgment against U.S. Compliance, to July 25, 2006, the date when the court finally ruled against Hartford. Eclipse is entitled only to postjudgment interest accruing after July 25, 2006.

CONCLUSION

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON and GILLERAN JOHNSON, JJ., concur.