KELLY SHERMACH, Petitioner-Appellant, v. JOSEPH BRUNORY, Respondent-Appellee (Riley Brunory, Minor-Appellee).

First District (4th Division)    No. 1—01—3305

Opinion filed August 8, 2002.—Rehearing denied September 9, 2002.

Philip E. Couri, of Couri & Couri, of Winnetka, for appellant.

Eva Tameling and Marcy Edwards, both of Tameling & Associates, P.C., of Oak Brook, for appellee Joseph Brunory.

Patrick T. Murphy, Public Guardian, of Chicago (Kenneth J. Hogan, of counsel), guardian *ad litem*.

JUSTICE THEIS delivered the opinion of the court:

Petitioner Kelly Shermach appeals from several orders entered by the circuit court of Cook County on respondent Joseph Brunory's petition for modification of custody of their minor son, Riley Brunory. Although Kelly raises a number of issues on appeal, we conclude that

the orders from which she appealed were not final and appealable. For that reason, we grant the office of the Cook County public guardian's (Public Guardian) and Joseph's motion to dismiss the appeal for lack of appellate jurisdiction.

Kelly and Joseph were never married. On March 24, 1995, Kelly filed a complaint against Joseph to determine the existence of a father and child relationship between him and Riley, born on March 20, 1994, pursuant to the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 1994)). On August 31, 1995, the court entered an agreed order establishing parentage based on Joseph's admission, granting custody of Riley to Kelly, setting Joseph's child support at $130 biweekly, creating a schedule for retroactive child support payments of $1,430, and awarding Joseph reasonable visitation rights. On July 24, 1997, Joseph filed a petition asking the court to set a visitation schedule. On August 7, 1997, Kelly petitioned for and obtained an emergency order of protection against Joseph based on allegations of stalking and harassment. On August 14, 1997, Kelly petitioned the court to restrict Joseph's visitation with Riley, alleging that Joseph physically abused Riley and used illegal drugs and that she feared he would sexually abuse Riley. On August 15, 1997, the court entered an agreed order dissolving the order of protection and allowing Joseph temporary supervised visits. The court later awarded Joseph unsupervised visitation based on the opinions of several experts. The litigation between the parties remained intense over the next several years concerning child support, visitation, attorney fees, past-due support payments, and therapy sessions.

On July 6, 2000, Joseph filed a petition for modification of child custody, asking the court to award temporary and permanent care, custody and control of Riley to Joseph, order Kelly to pay temporary and permanent child support to Joseph in reasonable amounts, and set a visitation schedule. In his attached affidavit, Joseph averred that Kelly interfered with and obstructed his attempts to visit Riley, restricted his telephone calls to his son, refused to participate in court-appointed mediation, and had been uncooperative with continuing Riley's court-ordered therapy appointments. Further, Joseph stated that Kelly expressed her intention to relocate with Riley to Philadelphia, Pennsylvania, in an attempt to limit and restrict Joseph's right to have a relationship with Riley.

On July 31, 2000, the Public Guardian, Riley's guardian *ad litem* and attorney, filed an emergency petition to modify custody and asked the court to give custody to Joseph, alleging that Kelly did not make Riley available for several scheduled visits with Joseph, Riley did not appear for his scheduled court-ordered therapy appointment, and

Kelly and Riley's whereabouts were unknown. On August 1, 2000, Joseph filed a corrected emergency petition for a rule to show cause and for a change in temporary custody based on his information and belief that Kelly left the jurisdiction with Riley. On that date, the court ordered that Kelly appear in court with Riley on August 3, 2000. When neither Kelly nor Riley appeared on August 3, the court issued a body attachment order for Kelly, which was never executed. On August 15, 2000, after hearing arguments on the emergency petitions, the court found that it was undisputed that the whereabouts of Kelly and Riley were unknown, that Kelly failed to make Riley available for scheduled visitation, failed to ensure that Riley attend a scheduled therapy appointment and failed to produce Riley in court as ordered. On these bases, the court granted temporary custody of Riley to Joseph.

On September 8, 2000, Kelly, whose whereabouts remained unknown, filed a response to the emergency petition to modify custody. On September 13, 2000, Kelly filed an emergency motion to stay enforcement of the August 15, 2000, order and quash the writ of attachment, alleging that she was ready to appear in open court. The court denied Kelly's motion to stay enforcement, but quashed the body attachment and ordered that Kelly have supervised visits with Riley. Kelly then filed a petition for leave to appeal to this court pursuant to Illinois Supreme Court Rule 306 (166 Ill. 2d R. 306), which this court denied.

On October 3, 2000, Kelly filed a petition to remove the Public Guardian, Susan Buckman Schulson, as Riley's attorney. After receiving responses from Schulson and Joseph, the trial court denied Kelly's motion on October 20, 2000. Thereafter, Kelly filed a petition for leave to appeal to this court pursuant to Rule 306, which was denied. On December 18, 2000, Kelly filed a motion to vacate the court's August 15, 2000, order transferring temporary custody to Joseph. After hearing arguments, the trial court denied Kelly's motion on February 28, 2001. Kelly filed a petition for leave to appeal to this court pursuant to Rule 306, which was denied "without prejudice to any appeal filed under Supreme Court Rule 306 after any subsequent evidentiary hearing."

In July 2001, the trial court conducted an eight-day evidentiary hearing on Joseph's petition for modification of child custody filed on July 6, 2000. On July 31, 2001, the court awarded Joseph sole custody of Riley, gave Kelly liberal visitation and phone contact pursuant to a schedule to be submitted by the parties similar to the schedule previously set for Joseph. The court ordered Kelly and Joseph to attend conciliation to develop a communication plan to be incorporated into

the parenting schedule. Joseph was ordered to insure that Riley attended his therapy sessions and both parents were ordered to enroll in individual therapy. In determining child support payments, the court ordered Kelly to pay 20% of her net income from all sources and ordered the parties to submit a uniform support order within 14 days which included a finding of Kelly's net income from all sources calculated from recent paychecks or other reliable evidence of her earnings. The court waived claims for past-due child support owed by Joseph or Kelly. Additionally, Joseph was ordered to maintain medical insurance and dental insurance, if available, for Riley, and Kelly would reimburse him for Riley's share of the cost of the insurance.

On August 27, 2001, Kelly filed a notice of appeal, appealing from the July 31, 2001, order permanently transferring custody of Riley to Joseph, the August 15, 2000, order granting temporary custody to Joseph, the July 10, 2001, order determining that there was sufficient evidence for the temporary transfer of Riley without an evidentiary hearing, and the orders of October 20, 2000, and June 14, 2001, denying Kelly's request to remove the Public Guardian. Shortly thereafter, the Public Guardian filed a motion in this court to dismiss Kelly's appeal for lack of jurisdiction. Joseph sought, and was granted, permission to join the Public Guardian's motion to dismiss the appeal. After receiving Kelly's response, we took the motion with the case. We now grant the Public Guardian's and Joseph's motion and dismiss the appeal for lack of appellate jurisdiction.

The Public Guardian and Joseph argue that the trial court's July 31, 2001, order was not a final and appealable order because while the court set Kelly's support obligation at 20% of her net income, it ordered the parties to submit a uniform support order within 14 days and did not determine a specific dollar amount of child support. Thus, the Public Guardian and Joseph contend, this court lacks jurisdiction to hear this appeal under Supreme Court Rule 301. 155 Ill. 2d R. 301. Kelly responds that the July 31, 2001, order was final and appealable because the main issue, custody, was resolved and the order determined the issue of child support by ordering Kelly to pay 20% of her net income.

●1 Supreme Court Rule 301 allows appeals from final judgments as a matter of right. 155 Ill. 2d R. 301. Appellate jurisdiction is limited to reviewing a final judgment that disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy. *Department of Public Aid ex rel. K.W. v. Lekberg*, 295 Ill. App. 3d 1067, 1069, 693 N.E.2d 894, 895 (1998). A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *In*

*re T.M.*, 302 Ill. App. 3d 33, 37, 706 N.E.2d 931, 934 (1998). Further, an order is final when matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the order. *In re T.M.*, 302 Ill. App. 3d at 37, 706 N.E.2d at 934. Where an order resolves less than all the claims brought by a party, the order is not final and appealable. *In re Marriage of Merrick*, 183 Ill. App. 3d 843, 845, 539 N.E.2d 868, 869 (1989).

■ We find that we are without jurisdiction to address the merits of this appeal because the order appealed from, the July 31, 2001, order, did not adjudicate all of the claims brought by Joseph. In his petition for modification of custody, Joseph asked the court to (1) award temporary and permanent care, custody and control of Riley to Joseph; (2) order Kelly to pay temporary and permanent child support to Joseph in reasonable amounts; and (3) set a visitation schedule. The July 31, 2001, order resolved the first and third issues by awarding permanent and sole custody of Riley to Joseph and creating a visitation schedule for Kelly. However, the court did not fully resolve the issue of permanent child support payments because it did not make a final decision or a specific ruling as to the amount of child support to be paid. The order merely stated that Kelly "shall pay through income withholding 20% of her net income from all sources for the current support of Riley. Counsel shall submit within 14 days a uniform support order which includes a finding of [Kelly's] net income from all sources calculated from recent paychecks or other reliable evidence of her earnings." The parties were ordered to return to court with evidence of Kelly's net income in order to determine the specific dollar amount of child support due Joseph. Thus, the July 31, 2001, order is not final.

This case is similar to *Deckard v. Joiner*, 44 Ill. 2d 412, 255 N.E.2d 900 (1970), a case upon which our supreme court recently relied in *Franson v. Micelli*, 172 Ill. 2d 352, 666 N.E.2d 1188 (1996). In *Deckard*, the mother filed a complaint to establish paternity and asked for child support and pregnancy-related expenses. On March 27, 1962, the trial court established paternity and found the father liable for support and expenses, but due to the father's unemployment, reserved the determination of the amount of support and expenses. *Deckard*, 44 Ill. 2d at 413-14, 255 N.E.2d at 901. On February 25, 1963, the court found that the father obtained employment and ordered him to pay doctor and hospital bills and pay child support of $15 per week. Our supreme court found that the March 27, 1962, order was not final and appealable because it provided that jurisdiction would be retained for the determination of a matter of substantial controversy between the parties, the amount of support and expenses for which the father was

liable. However, the court found that the February 25, 1963, order ended the controversy because it resolved the remaining issue and fixed the amount of support the father was to pay. "This was the final determination of the ultimate rights of the parties put in issue by the complaint, and the only matters left for the court, such as the enforcement of its support order or the increase of support if the need arose, were only incidental to the matters adjudicated in the 1962 and 1963 orders." *Deckard*, 44 Ill. 2d at 417, 255 N.E.2d at 903.

Similarly, the July 31, 2001, order was not final and appealable where it failed to determine an issue raised in Joseph's petition for modification of custody and a matter of potentially substantial controversy between the parties, the exact amount of Kelly's child support payments. This order would not be final and could not be appealed under Rule 301 unless and until the trial court fixed the precise dollar amount of Kelly's payments. Further, Joseph could not attempt to enforce the July 31, 2001, order or collect child support from Kelly without the court's later determination of the exact amount of Kelly's support obligation. Thus, the notice of appeal filed before the uniform support order was entered was premature and we lack jurisdiction to address the July 31, 2001, order and all orders entered prior to that date.

We find additional support in *Department of Public Aid ex rel. Chiapelli v. Viviano*, 195 Ill. App. 3d 1033, 553 N.E.2d 97 (1990). In *Chiapelli*, the court found that an order setting the father's retroactive child support obligation at 20% of his net income for the previous four years and ordering the father to produce evidence of his income within 14 days was not final and appealable. *Chiapelli*, 195 Ill. App. 3d at 1034-35, 553 N.E.2d at 98. In that case, while the trial court set the father's retroactive child support obligation at 20% of his net income, it did not determine the exact amount of payments. "This is not a mere ministerial act upon which a calculation can easily be measured, as there are potential disputes about the materials submitted, the inferences drawn from any material, and the amounts to properly be considered in arriving at a net upon which 20% can be assessed." *Chiapelli*, 195 Ill. App. 3d at 1035, 553 N.E.2d at 98. Although the present case involves current child support obligations and not retroactive support, we find the distinction immaterial and similarly hold that the potential disputes that could arise over the 20% figure makes this an order that lacks the essentials of a final judgment. See also 750 ILCS 45/14(a)(1) (West 2000); 750 ILCS 5/505(a)(5) (West 2000) (stating that "[t]he final order in all cases shall state the [child] support level in dollar amounts"); *Lekberg*, 295 Ill. App. 3d at 1069, 693 N.E.2d at 895; *Baldassone v. Gorzelanczyk*, 282 Ill. App. 3d 330, 333, 667

N.E.2d 639, 642 (1996) (holding that an order declaring parentage is not a final order if it does not at least rule on the amount of child support for which the defendant is liable).

We find *In re Custody of Purdy*, 112 Ill. 2d 1, 490 N.E.2d 1278 (1986), distinguishable. In *Purdy*, the cause of action was the father's postdissolution petition for a change of custody, which the trial court granted. Our supreme court found that the order for a change of custody in that context was final because *all* related claims had been decided, even though the trial court reserved ruling on the extent of the mother's summer visitation, a matter that is always subject to revision. *Purdy*, 112 Ill. 2d at 5, 490 N.E.2d at 1279-80. In the present case, however, Joseph's petition for modification of custody sought a change in custody, child support and visitation. The court's July 31, 2001, order did not decide all claims related to this petition because the court never fully resolved the issue of child support.

Further, *Purdy* determined that the issue reserved by the trial court, the extent of the mother's summer visitation, was merely incidental to the ultimate rights adjudicated, custody of the child, and thus, the order was final and appealable. *Merrick*, 183 Ill. App. 3d at 846, 539 N.E.2d at 870, citing *Purdy*, 112 Ill. 2d at 5, 490 N.E.2d at 1279-80. Our supreme court has held that the issue of present child support obligations is a matter of substantial controversy between the parties and is not merely ancillary or incidental. *Franson*, 172 Ill. 2d at 356-57, 666 N.E.2d at 1190. In the present case, the matter reserved by the trial court, the exact amount of child support owed by Kelly, was not incidental to the ultimate rights that had been adjudicated. Child support was included as a specific claim for relief in Joseph's petition for modification of child custody and was not incidental. See generally *Merrick*, 183 Ill. App. 3d at 845-46, 539 N.E.2d at 870 (distinguishing *Purdy* because the matters reserved by the trial court, interest on a bonus check and attorney fees, were two of petitioner's claims for relief and were not incidental); *In re Marriage of Piccione*, 158 Ill. App. 3d 955, 962-63, 511 N.E.2d 1157, 1162-63 (1987) (distinguishing *Purdy* where issue of attorney fees integrally related to parties' financial resources and child support).

We agree with the Public Guardian that under Rule 301, the trial court's determination of Kelly's support obligation is not separable from that portion of its order granting Joseph's petition to modify custody. The determination of a noncustodial parent's support obligation is integrally related to the determination of custody. The transfer of custody gives rise to the child support obligation of the parent from whom custody is transferred. 750 ILCS 45/14(a)(2) (West 2000) ("the establishment of a support obligation or of visitation rights in one par-

ent shall be considered a judgment granting custody to the other parent"). Courts have treated custody and support as interrelated components of a single claim regardless of the context in which they arise. *Franson*, 172 Ill. 2d at 355, 666 N.E.2d at 1189 (relying on *Deckard*); *In re Marriage of Leopando*, 96 Ill. 2d 114, 119, 449 N.E.2d 137, 140 (1983) ("where a dissolution of marriage is granted, a determination as to which party receives custody will necessarily affect how much, if any, support and maintenance are paid"); *Deckard*, 44 Ill. 2d at 417, 255 N.E.2d at 903 (a paternity order is not final and appealable without a determination of the amount of support); *Baldassone*, 282 Ill. App. 3d at 334, 667 N.E.2d at 643 ("a complaint seeking a determination of paternity and child support advances a single claim, not separate, unrelated claims"). Thus, unlike the change of custody order in *Purdy*, the July 31, 2001, order was not final and appealable.

Kelly argues that the Public Guardian's motion to dismiss this appeal is untimely because it previously filed its appearance and a responsive pleading in this court. However, a party cannot consent to or waive appellate jurisdiction. *Gaynor v. Burlington Northern & Santa Fe Ry.*, 322 Ill. App. 3d 288, 289, 750 N.E.2d 307, 308 (2001). Further, this court has an obligation to *sua sponte* consider whether jurisdiction exists at any time, even after the parties have briefed the merits of the case. *In re Marriage of Carr*, 323 Ill. App. 3d 481, 483, 752 N.E.2d 1181, 1183 (2001). Additionally, Kelly contends that her appeal is proper based on this court's third order denying her petition for leave to appeal pursuant to Rule 306. That order stated that her petition was denied "without prejudice to any appeal filed under Supreme Court Rule 306 after any subsequent evidentiary hearing." Here, Kelly filed only a notice of appeal and did not file a petition for leave to appeal pursuant to Rule 306. Further, in her reply brief, she states that there was no need to file a petition under Rule 306 because the July 31, 2001, order was final and appealable. Thus, Kelly's appeal was based solely on jurisdiction from a final judgment under Rule 301 and not on Rule 306, which applies only to interlocutory appeals. Moreover, this court has discretion to grant or deny any appeal filed under Rule 306. *Miller v. Consolidated R. Corp.*, 173 Ill. 2d 252, 256, 671 N.E.2d 39, 42 (1996). Thus, we reject Kelly's arguments.

We see no compelling reason for allowing piecemeal appeals when the matter of child support has only been partially determined by the trial court. For the foregoing reasons, this appeal is dismissed for lack of jurisdiction.

Appeal dismissed.

HARTMAN and KARNEZIS, JJ., concur.