In re COMMITMENT OF BENJAMIN HERNANDEZ (The People of the State of Illinois, Petitioner-Appellant, v. Benjamin Hernandez, Respondent-Appellee).

Second District    No. 2—07—0853

Opinion filed June 15, 2009.

O'MALLEY, J., specially concurring.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Garson S. Fischer and Michael M. Glick, Assistant Attorneys General, of counsel), for the People.

David J. Brown, of Rockford, for appellee.

JUSTICE JORGENSEN delivered the opinion of the court:

Respondent, Benjamin Hernandez, was adjudicated a sexually violent person under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2004)) and was to be placed on conditional release. The State appealed. Because the State filed its notice of appeal before the trial court approved the conditional release plan, we lack jurisdiction. We therefore dismiss the appeal.

On January 14, 2004, the trial court adjudicated defendant a sexually violent person. See 725 ILCS 207/35(f) (West 2004). The matter was continued for disposition. On April 25, 2007, the State summarized the status of the case:

"Judge, as I recall, on September 6, 2005, the Court ordered that ResCare was to propose a conditional discharge plan that meets the minimal qualifications of [the Department of Human Services (DHS)] and provide respondent's attorney said plan and turn it over to the [A]ttorney [G]eneral's office, also.

That's by statute. There is in the statute a conditional release plan *or requirements of such set out in the statute. We never received anything that addressed the issues that are raised for conditional release plan in the statute."

On a final note, defense counsel stated:

"If the Court is of the view you are going to place him on a conditional release with certain conditions, then per [the] Sexually Violent Persons Commitment Act[,] DHS is now supposed to provide you a plan in accordance with your wishes. That is their statutory obligation."

The case was continued. On July 3, 2007, the court ruled as follows:

"I am convinced at this time that I would take the step of order-

ing conditional release, and I believe the statute requires that the department provide a conditional release plan."

The July 3 order reads, "[r]espondent is to be placed on conditional release as disposition." The court continued the matter "for the presentation of a release plan."

On July 19, 2007, the State filed a motion to reconsider conditionally releasing respondent, and the motion was denied on July 20, 2007. The State filed its notice of appeal on August 20, 2007. On September 21, 2007, the court accepted and approved a 13-page conditional release plan. The conditional release plan sets forth where respondent will reside and who will provide case management services. The plan also sets forth the conditional release strategy, the conditions of release, monitoring provisions, and the consequences of violating the release plan. We do not have a transcript of the hearing on September 21, 2007, but the docket sheet for that date reads: "The DHS plan is accepted by the Court and [respondent] is advised of the plan. [Respondent] agrees to the plan and is to be released." The State did not file a new notice of appeal.

To establish jurisdiction, the State invokes Supreme Court Rules 301 (155 Ill. 2d R. 301) and 303 (210 Ill. 2d R. 303), which provide for appeals as a matter of right from final judgments.[1] The State submits the July 3, 2007, order as the final judgment and thus concludes that its notice of appeal, filed within 30 days of the denial of its motion to reconsider on July 20, 2007, was timely.

We asked the parties to file supplemental briefs, specifically addressing whether the September 21, 2007, order approving the release plan has any impact on our jurisdiction. The State has filed a supplemental brief, arguing that we have jurisdiction because: (1) the July 3 order stating that respondent was to be conditionally released was final pursuant to the plain language of sections 35(g) and 40(b)(2) of the Act (725 ILCS 207/35(g), 40(b)(2) (West 2006)); (2) the July 3 order was final because it adjudicated the ultimate right, namely, whether respondent would be committed or released, and the details of the release plan were merely incidental to this right; and (3) alternatively, Supreme Court Rule 303(a)(1) allows the notice of appeal to be treated as filed on the date of the final order (Ill. S. Ct. R. 303(a)(1) (eff. May 1, 2007)). Respondent failed to file a supplemental brief.

---

[1]Proceedings under the Act are civil and the rules of civil practice apply. See 725 ILCS 207/20 (West 2004); *People v. Rainey*, 325 Ill. App. 3d 573, 582 (2001).

With exceptions not applicable here, our jurisdiction is limited to appeals from final judgments. 155 Ill. 2d R. 301; *Puleo v. McGladrey & Pullen*, 315 Ill. App. 3d 1041, 1043 (2000). For purposes of Rule 301, " '[a] final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.' " *In re M.M.*, 337 Ill. App. 3d 764, 771 (2003), quoting *In re Adoption of Ginnell*, 316 Ill. App. 3d 789, 793 (2000). "An order is final for purposes of review when matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the judgment." *In re Detention of Lieberman*, 356 Ill. App. 3d 373, 377 (2005). An order is not final where jurisdiction is retained for matters of substantial controversy. *Ginnell*, 316 Ill. App. 3d at 793.

To establish jurisdiction, the State first relies on sections 35(g) and 40(b)(2) of the Act. The State's argument is as follows. Section 35(g) states that the court's finding that a person is sexually violent is interlocutory to the commitment order under section 40. 725 ILCS 207/35(g) (West 2006). Thus, it follows that the commitment order is the final order. Furthermore, pursuant to section 40(b)(2), the commitment order shall specify "either institutional care *** or conditional release." 725 ILCS 207/40(b)(2) (West 2006). Here, the order entered on July 3 specified conditional release; therefore, it must be a final order. The appealability of an order, however, is dependent upon its substance, not necessarily its form. *Altschuler v. Altschuler*, 399 Ill. 559, 570 (1948); *Harold Butler Enterprises No. 662, Inc. v. Underwriters at Lloyds, London*, 100 Ill. App. 3d 681, 686 (1981). Again, "[t]he ultimate test of finality is whether the judgment appealed from fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined." *American Federation of State, County & Municipal Employees (AFSCME) v. State of Illinois*, 192 Ill. App. 3d 108, 111 (1989). Here, the July 3 order did not fully and finally dispose of the rights of the parties.

Instead, the July 3 order necessitated and contemplated further action by the court to determine the conditions of release. The court expressly retained jurisdiction over the proceedings for approval of the conditional release plan, as required by statute. See *In re Detention of Hayes*, 321 Ill. App. 3d 178, 195 (2001) ("under section 40(b)(3) a trial court is required to approve a treatment plan"). We determine that the reservation of jurisdiction for the purpose of entering a conditional release plan shows that not all of the issues in dispute were fully addressed and settled by the July 3 order. Thus, the July 3 order was not final.

Furthermore, the approval of the 13-page conditional release plan was not merely incidental to the ultimate rights adjudicated. Rather, the matters left for future determination were essential to the case— the terms under which respondent was to be conditionally released. The parties could not enforce the July 3 order until the court specified the conditions of release; that is, without those conditions, there could be no conditional release. See *People v. Brown*, 137 Ill. App. 3d 453, 454 (1985) (if a discretionary condition of probation or conditional discharge has not been reduced to writing, a petition to revoke may not be premised upon any alleged violation of such a condition); see also *People v. Susberry*, 68 Ill. App. 3d 555, 561 (1979) (the conditions of probation should not be orally stated but should be spelled out in the probation order in clear and unmistakable detail); *People v. Einoder*, 96 Ill. App. 2d 174, 180 (1968) (the order granting probation must contain all the conditions of the probation). And the docket sheet for September 21, 2007, makes clear that only on that date was defendant advised of the release plan and indeed released.

The statutorily required provisions for a conditional release plan underscore the importance of a release plan "that is specific and clear in order that it be a final disposition, capable of being interpreted and enforced." *In re Marriage of Capitani*, 368 Ill. App. 3d 486, 487 (2006) (joint parenting order not incidental such that dissolution judgment was final). The relevant statute reads in pertinent part:

> "If the court finds that the person is appropriate for conditional release, the court shall notify the Department. The Department shall prepare a plan that *identifies* the treatment and services, if any, that the person will receive in the community. The plan shall *address* the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment. \*\*\* The plan shall *specify* who will be responsible for providing the treatment and services identified in the plan. The plan shall be presented to the court for its approval within 60 days after the court finding that the person is appropriate for conditional release, unless the Department and the person to be released request additional time to develop the plan." (Emphases added.) 725 ILCS 207/40(b)(3) (West 2006).

The *13-page* conditional release plan entered on September 21, 2007, specified that respondent would be managed by a case management team consisting of Alternative Behavior Treatment Center staff, the Liberty Healthcare Corporation conditional release agent, a polygraph examiner, and DHS Safety 1st conditional release staff. The plan also identified and addressed respondent's specific needs in terms of sex of-

fender treatment and sex offender registration, and it set forth a specific plan to obtain the necessary treatment and assistance in registering as a sex offender. The plan also specified where respondent would reside and addressed his need for supervision by way of a global-positioning-system monitor. Because the plan addressing defendant's needs for treatment and services, identifying the treatment and services he would receive, and specifying who would provide such treatment and services was not realized until September 21, 2007, the July 3 order was not final. The breadth of areas to be covered by the plan and the specificity of the conditions to be included reinforce our conclusion that the conditions of the conditional release plan are not incidental; they are the final order. See *Capitani*, 368 Ill. App. 3d at 488; see also *Shermach v. Brunory*, 333 Ill. App. 3d 313, 317 (2002) (where petitioner was ordered to pay child support but the case was continued for the parties to present evidence of petitioner's net income in order to determine the specific dollar amount of child support, first order was not final).

The State distinguishes *Capitani* and *Shermach* on the basis that, in those cases, the court continued the matters for further action by the *court*, whereas here the case was continued for further action by *DHS*, namely, preparation of the conditional release plan. But the court still had to review the proposed release plan and approve the conditions it deemed appropriate, and it retained jurisdiction so that it could do so.

We also reject the State's argument that approval of the plan was merely incidental because the Act "does not make the details of that plan a matter of dispute between the parties." As the State notes, the Act states that the plan must be "presented to the court for its approval." 725 ILCS 207/40(b)(3) (West 2006). According to the State, because the Act does not specify that a *hearing* must be held for approval of the plan, the approval process is not a matter of dispute. But the statute does not preclude the parties from contesting the plan, nor does it preclude a hearing to resolve any such issue. Thus, the State's argument fails.

Lastly, the State relies on Supreme Court Rule 303(a)(1) to establish jurisdiction. The rule does not apply here. The supreme court amended Rule 303(a)(1), effective May 1, 2007, to state:

"A notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. May 1, 2007).

Rule 303(a)(1) contemplates a situation where the court orally

pronounces a final judgment but the written order follows later. In such a situation, the notice of appeal filed after the oral pronouncement but before entry of the written order is treated as filed on the date of the written order. The rule does not apply here, because the court did not orally pronounce a final judgment on July 3 and the release plan was not merely the embodiment of the oral pronouncement.

In *Eclipse Manufacturing Co. v. United States Compliance Co.*, 381 Ill. App. 3d 127 (2007), this court interpreted this new amendment. In *Eclipse*, Eclipse filed suit against the United States Compliance Company (U.S. Compliance) for faxing advertisements to Eclipse without first obtaining its permission to do so. *Eclipse*, 381 Ill. App. 3d at 128-29. U.S. Compliance served its insurance company, Hartford Casualty Insurance Company, with a demand for Hartford to defend U.S. Compliance, based on its commercial general liability insurance policy. *Eclipse*, 381 Ill. App. 3d at 129. Hartford denied coverage. Eclipse and U.S. Compliance then settled the claim for $3,999,999.98. *Eclipse*, 381 Ill. App. 3d at 130.

Eclipse filed a third-party citation proceeding against Hartford in an effort to satisfy the judgment with the insurance proceeds. *Eclipse*, 381 Ill. App. 3d at 131. On July 25, 2006, the trial court heard argument on the third-party citation and stated that it would rule for Eclipse and against Hartford. *Eclipse*, 381 Ill. App. 3d at 131. The court directed the parties to prepare draft orders incorporating the court's comments, but Eclipse and Hartford could not agree on the language. *Eclipse*, 381 Ill. App. 3d at 131. Although the court expressly stated that it had not yet entered a final order, Hartford filed a " 'protective' " notice of appeal on August 22, 2006. *Eclipse*, 381 Ill. App. 3d at 131. This court found that, under the former Rule 303(a)(1), jurisdiction would be lacking because the trial court's July 25, 2006, order was not final and Hartford's "protective" notice of appeal was premature. *Eclipse*, 381 Ill. App. 3d at 132. However, applying the 2007 amendment to Rule 303(a)(1), we concluded that we had jurisdiction over the appeal because the August 22, 2006, "protective" notice of appeal was to be treated as filed on August 25, 2006, the date on which the final judgment was entered. *Eclipse*, 381 Ill. App. 3d at 132-33. The final judgment ordered Hartford to pay Eclipse $3,999,999.98, plus costs and statutory postjudgment interest accruing from the July 25, 2006, ruling. *Eclipse*, 381 Ill. App. 3d at 131.

The facts of *Eclipse* are distinguishable from our case. In *Eclipse*, the written order was merely the embodiment of the court's oral pronouncement on July 25, 2006. This conclusion is supported by the court's action of directing the parties to prepare draft orders

incorporating the court's comments. The case was continued only for submission of these draft orders, and the court did not reserve jurisdiction for any matters of substantial controversy. This was precisely the situation contemplated by the amendment to Rule 303(a)(1).

Here, on the other hand, at the July 3 hearing, the court stated: "I am convinced at this time that I would take the step of ordering conditional release, and I believe the statute requires that the department provide a conditional release plan." The court then continued the matter for presentation of the release plan. The details of the release plan were litigated only after the August notice of appeal was filed. Because the release plan entered on September 21, 2007, was not merely the embodiment of a final judgment orally pronounced on July 3, 2007, but rather was the final judgment itself, Rule 303(a)(1) does not apply here.

While we dismiss this appeal for lack of appellate jurisdiction, we share the frustration evident in the words and tenor of the special concurrence. Defendant's history of sexual violence is extensive, dating back to 1990. This is further exacerbated by the escalating nature of defendant's activity and his failure to participate in required treatment. We appreciate the State's desire to have this court review the merits.

However, we are a court of review bound by the existing supreme court rules, which circumscribe the jurisdiction of this court. We cannot create jurisdiction where none exists and must apply the current rules without regard to the outcome. Change in the rules of appellate jurisdiction that would allow consideration of the merits in this case must be accomplished in a forum other than this court.

Appeal dismissed.

SCHOSTOK, J., concurs.

JUSTICE O'MALLEY, specially concurring:

While I reluctantly concur in the majority's holding that we lack jurisdiction over this appeal, I write separately to voice my concerns with this result.

At issue here substantively was the State's contention that the trial court did not properly or sufficiently consider the factors governing whether a sexually violent person (SVP) should be committed to institutional care in a secure facility or whether he should receive conditional release back into the community upon which he has preyed. See 725 ILCS 207/40(b)(2) (West 2006). Thus, the State's position was that respondent should not be released into the community

under any conditions; that is the sole issue on which the State seeks review.

Evidence in the record shows that respondent has a history of sexual violence beginning in 1990, when he was 14 years of age, when he struck a 7-year-old girl and asked her, "Do you want to get humped?" No charges resulted from that incident.

A year later, respondent touched a nine-year-old girl's genitals and, while both were clothed, simulated sex with her while she was held down by another boy. When the victim began screaming and crying, respondent got up and allowed the victim to run away. When this incident was investigated, the police uncovered evidence that respondent had been making repeated, inappropriate sexual comments to young girls and inappropriate sexual comments involving young girls.

In 1996, when respondent was 20 years old, he was convicted of a battery that had sexual components. The incident began when respondent reached through a chain-link fence at a public pool and pinched the buttocks of an 11-year-old girl. The girl's 14-year-old brother confronted respondent, and respondent punched the boy in the face.

In 1998, respondent was convicted of two separate incidents of aggravated criminal sexual abuse stemming from incidents that occurred in 1997. In one case, respondent's 15-year-old girlfriend reported that respondent had sexual intercourse with her on two occasions. On one of the occasions, the victim was unwilling to participate in sexual intercourse, but respondent "badgered" and "forced" her to have intercourse. Respondent also told the victim that he was 16 years of age, even though he was 21 years old at the time. In the second incident, respondent forced intercourse with his 13-year-old neighbor.

Respondent also had convictions of other crimes. One incident involved respondent, who was 20 years old, grabbing the buttocks of a 14-year-old girl, backing her against a wall, and trying to put his hand into her shorts. In addition to the other crimes, respondent has continued to demonstrate an inability to control his urges. For example, while respondent was on parole, he would hang around the local library seeking to establish relationships with young girls. Respondent even had a neighbor write a letter for him (respondent appears to be functionally illiterate) to a 12-year-old girl whom he was apparently grooming to be another victim.

This recitation of respondent's history is designed to show that the State had a substantial and legitimate interest in seeking review of the merits of the trial court's decision to place respondent into an out-patient conditional release setting rather than placing him in a

custodial secure facility where he might be able to receive treatment and where he would not endanger young girls. Further, the State presented evidence that supported the contention that respondent was an SVP who was a distinct danger to relapse into his predatory ways unless he received treatment. The State also presented evidence showing that respondent would not undertake treatment on his own, having refused to seek treatment while on parole, even though enrolling in and receiving sexual offender treatment was a condition of his parole.

The stakes in this case, then, are high. If we could reach the merits, we should, but we are constrained to follow the law as it exists, and not to rewrite the law to allow us to reach a desired outcome. For example, an argument could be made that Illinois Supreme Court Rule 303(a)(2) (eff. May 1, 2007) affords us an avenue by which to claim jurisdiction. For this argument to succeed, we would have to characterize the July 3, 2007, judgment as a final judgment, ignoring the fact that the conditions of the conditional release had to be approved by the court. Further, we would have to characterize the conditions to be approved by the court as a pending claim in the action. If we take those steps, then Rule 303(a)(2) would give us jurisdiction as follows. If the July 3, 2007, order were deemed a final judgment, then the State's July 19, 2007, motion to reconsider would be a postjudgment motion. On July 20, 2007, the trial court denied the motion to reconsider. On August 20, 2007, the State filed its notice of appeal. On September 21, 2007, the trial court resolved the "remaining claim," namely, approving the conditions of respondent's conditional release. By application of Rule 303(a)(2), the premature notice of appeal would be made valid. Ill. S. Ct. R. 303(a)(2) (eff. May 1, 2007) ("a notice of appeal filed before the *** final disposition of any separate claim[ ] becomes effective when the order disposing of said *** claim is entered).

By twisting the concepts of "final order" and "pending claim" in the action, we could manufacture jurisdiction here. While that course might pass a "straight face" test, it does not bear up under dispassionate consideration. The July 3, 2007, order is nonfinal because it both required and contemplated further action by the trial court. 392 Ill. App. 3d at 530. Likewise, the conditions necessary to implement the conditional release are not a separate claim; rather, they are intertwined with the adjudication of conditional release. 725 ILCS 207/40(b)(3) (West 2006). This remains true even though the State was opposed to respondent's release under any conditions. Thus, the State's motion to reconsider cannot reasonably be construed, at least

not by the appellate court, to be a postjudgment motion, and Rule 303(a)(2) does not apply.

Our jurisdiction in this case is not engaged, because the August 20, 2007, notice of appeal was premature and the State did not file another notice of appeal following the September 21, 2007, final judgment that approved the conditions of respondent's conditional release. This is an unfortunate and unconscionable result due to the hazards and intricacies of appellate jurisdiction. Appellate jurisdiction is rather like taking a stroll in a minefield. *People v. Marker*, 382 Ill. App. 3d 464, 485 (2008) (O'Malley, J., dissenting), *rev'd*, 233 Ill. 2d 158 (2009); *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 446 (2000). Here, the State stepped on the landmine of a premature notice of appeal—a problem that persists notwithstanding our supreme court's effort to eradicate this pitfall by amending Rule 303 (Ill. S. Ct. R. 303 (eff. May 1, 2007)). It is noteworthy that neither party recognized the lack of jurisdiction initially, recognized it after we ordered a supplemental statement of jurisdiction, or recognized it even when we later ordered additional briefing on the issue. Rather, we followed the supreme court's admonition regarding the appellate court's most important tasks: "the ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case. The other is to determine which issue or issues, if any, have been forfeited." *People v. Smith*, 228 Ill. 2d 95, 106 (2008). While we are constrained to follow this supreme court admonition, it nevertheless remains true that, however important jurisdiction may be, it is, at the appellate level, quite arbitrary. Appellate review of a decision to release a habitual child molester into the community is manifestly important and our system urgently needs a little tweaking so that this equally important concern is not hindered by arbitrary rules governing the important concern of appellate jurisdiction. For example, why cannot all premature notices of appeal be treated like the select ones covered by the recent amendment to Rule 303? If that were the case, we would have jurisdiction over this very important matter, just as the parties thought, quite persistently, we had.

Many times the issue of appellate jurisdiction is nothing more than a question of how to count to 30. The cases are legion that discuss the art of counting to 30—whether to count certain holidays, how to treat weekends, when to start counting, etc. And equally arbitrary is the number 30 itself. The period in which to file a notice of appeal could just as logically be 35 days or 28 days or whatever number of days reasonably would allow a party to make the weighty decision to launch an appeal.

Another significant issue I see is using the word "jurisdiction" in this context. The notion of whether and when we ought to be reviewing the work of the trial court is important, but it is nowhere nearly as fundamental to our system of justice as is *in personam* jurisdiction or subject matter jurisdiction in the trial court. In the context of *in personam* or subject matter jurisdiction, the issue is not just important, but fundamental. In the context of how to count to 30, it is something quite a bit less portentous.

It is my sincere hope that the quirks of the law of appellate jurisdiction can be removed so that other important cases like this one do not evade our review on the merits through a technical error on the part of one of the parties.