SECOND DIVISION

No. 1-09-2231

| | | |
|---|---|---|
| GUADALUPE GALVEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE RENTAS, | ) | No. 06 D 80378 |
| | ) | |
| Respondent-Appellant | ) | |
| | ) | Honorable |
| (The Illinois Department of Healthcare and Family | ) | Patricia M. Logue, |
| Services, Intervenor-Appellee). | ) | Judge Presiding. |

KARNEZIS, J., delivered the opinion of the court:

This appeal arises from an order of the circuit court denying respondent Jose Rentas' petition for deoxyribonucleic acid (DNA) testing filed pursuant to section 11(a) of the Illinois Parentage Act of 1984 (Parentage Act or Act) (750 ILCS 45/11(a) (West 2008)). Rentas filed his petition for genetic testing in response to a 2008 petition filed by the Illinois Department of Healthcare and Family Services (the Department), intervening on behalf of petitioner Guadalupe Galvez, seeking retroactive child support payments. Galvez is the mother of a boy allegedly fathered by Rentas. The court denied Rentas' petition for DNA testing on his motion to reconsider, finding his petition was not timely brought and a previous DNA test and a 2006 parenting agreed order conclusively established Rentas as the father of Galvez's son. Rentas argues the court

erred in denying his petition because (1) section 11 imposes no time limit for genetic testing in paternity cases and (2) the previous court order establishing his paternity was not a final and appealable order under section 14 of the Parentage Act (750 ILCS 45/14 (West 2008)) and, therefore, could be modified at any time. We affirm.

BACKGROUND

In 1990, Guadalupe Galvez married Ernesto Nunez. During their marriage, a daughter was born in 1996 and a son in August 2004. In December 2004, Galvez petitioned for divorce, asserting two children were born to the parties during the marriage. In July 2005, she filed an amended petition, claiming that only her daughter was born to the parties during the marriage. At a hearing on the amended petition, Galvez testified Nunez was not her son's father and that Rentas was the father. Nunez was married to Galvez at the time of the boy's birth and is, therefore, the boy's presumed father pursuant to section 5(a)(1) of the Parentage Act (750 ILCS 45/5(a)(1) (West 2008)). *In re Parentage of John M.*, 212 Ill. 2d 253, 256 (2004). Galvez presented the results of an August 2005 DNA test showing a 99.99999% probability that Rentas fathered the boy. Nunez did not appear and the court entered a default judgment for dissolution of marriage on November 1, 2005. It ordered Nunez to pay child support for his daughter and concluded Nunez was not the boy's father.

In August 2006, Galvez filed a petition to establish parentage and custody and sought injunctive and other relief. She asked the court to declare Rentas the father of her son. Galvez claimed that she and Rentas had been involved in an "exclusive

boyfriend-girlfriend relationship" since February 2000; she became pregnant by Rentas and gave birth to their son in 2004; she and Rentas were living with their son and had been taking care of him since his birth; and Rentas took a DNA test in August 2005 and had accepted paternity of the child.  She attached a copy of the 2005 DNA report showing 99.9999% probability that Rentas was the biological father.  Galvez also filed notice of a motion to present a parenting agreed order.  Rentas appeared *pro se* at the hearing on the petition and did not contest it.

On September 13, 2006, the circuit court entered the two-part agreed order (2006 order) presented by Galvez.  Galvez and Rentas had signed the agreed order on March 31, 2006.  In the first part, the parenting agreed order, the court declared that Rentas was the biological and legal father of the child and ordered the boy's name changed from Ernesto Nunez, Jr., to Jose Antonio Rentas, Jr.  In the second part, the joint parenting agreement, the court awarded joint legal custody of the child to Galvez and Rentas, ordered physical custody to remain with the parties at Galvez's home and outlined both parents' rights and responsibilities in rearing Jose Jr.

In January 2007, the Department filed a motion to intervene on issues of child support, health insurance and parentage on behalf of Galvez because she had sought and received financial assistance from the Department.  It sought reimbursement from Rentas for child support, asserting Rentas had been declared the boy's father in the September 2006 order and child support and medical insurance had not been addressed.  On February 14, 2007, the circuit court granted the Department's motion to

3

intervene but reserved issues of child support and health insurance because Galvez and Rentas were still living together with Jose Jr.

By late 2008, Galvez and Rentas were living apart. On December 30, 2008, the Department filed a petition seeking modification of reserved child support and health care, retroactive to February 2007. In response, on February 27, 2009, Rentas filed a petition for DNA testing pursuant to section 11 of the Parentage Act. On March 4, 2009, the circuit court denied Rentas' petition for genetic testing. It noted that a parentage and joint parenting agreement had been entered in September 2006, the boy's birth certificate had been changed from Ernesto Nunez, Jr., to Jose Antonio Rentas, Jr., and Rentas' petition for DNA testing was "post-judgment."

Rentas filed a motion to reconsider. Although the court granted the motion to reconsider, it again denied Rentas' petition for genetic testing on July 10, 2009. The court found that the 2006 order declaring parentage was both an agreed order and a final order and, could, therefore, only be amended or vacated by either consent of the parties or timely filing of a petition under section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)) petition, neither of which occurred. It also found that section 11 does not provide an independent cause of action for genetic testing but, rather, is a tool available to the court and the parties within the context of a pending paternity action. Because Rentas could not show a pending, unresolved paternity action, the court found section 11 was inapplicable. Rentas timely appealed on August 7, 2009.

ANALYSIS

The sole issue on appeal is whether the court erred in denying Rentas' petition for DNA testing filed pursuant to section 11 of the Parentage Act. We review the court's statutory construction of section 11 *de novo*. *People ex. rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 396-97 (2004). A fundamental principle of statutory construction is to view all provisions of an enactment as a whole. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007). To determine whether the court erred in denying Rentas' request for DNA testing, we must examine the Act as a whole, interpreting the words and phrases in section 11 in light of other relevant provisions of the statute and not in isolation. *J.S.A.*, 224 Ill. 2d at 197. .

The Parentage Act provides a " 'statutory mechanism that serves to legally establish parent and child relationships in Illinois.' " *J.S.A.*, 224 Ill. 2d at 198, quoting *In re Estate of Poole*, 207 Ill. 2d 393, 404 (2003). It provides that "[t]he parent and child relationship *** extends equally to every child and to every parent, regardless of the marital status of the parents." 750 ILCS 45/3 (West 2008); *J.S.A.*, 224 Ill. 2d at 198. Under the Act, legal paternity is established in one of three ways: by presumption (750 ILCS 45/5 (West 2008)), by consent (750 ILCS 45/6 (West 2008)) or by judicial determination (750 ILCS 45/7 (West 2008)). *J.S.A.*, 224 Ill. 2d at 198.

Rentas was not the presumed father of the boy pursuant to section 5 of the Parentage Act. He was never married to Galvez, either before or after the boy was born (presumptions under sections 5(a)(1) and 5(a)(2)). Nor had he and Galvez signed

5

"an acknowledgment of paternity in accordance with rules adopted by the ***

Department of Public Aid under Section 10-17.7 of the Illinois Public Aid Code"

(presumption under section 5(a)(3)) or "an acknowledgment of parentage *** in

accordance with Section 12 of the Vital Records Act" (presumption under section

5(a)(4)). 750 ILCS 45/5(a) (West 2008).

Section 10-17.7 of the Illinois Public Aid Code (305 ILCS 5/10-17.7 (West 2008))

and section 12 of the Vital Records Act (410 ILCS 535/12(4) (West 2008)) set forth

similar requirements for the acknowledgment of paternity/parentage. Each requires the

mother and putative father of a child to complete a form stating they are the child's

parents. Both types of form inform the parents of their rights and obligations are under

the Parentage Act. The parents' execution of the forms must be witnessed by assorted

officials. Rentas and Galvez did not complete either type of form.

Rentas was not the legal father by consent pursuant to section 6 of the

Parentage Act. Section 6 concerns only relationships established voluntarily by the

signing and witnessing of a voluntary acknowledgment of parentage in accordance with

section 10-17.7 of the Illinois Public Aid Code, Section 12 of the Vital Records Act or

the provisions of the Gestational Surrogacy Act (750 ILCS 47/1 *et seq.* (West 2008)),

none of which apply here.

Rentas' paternity was established by judicial determination pursuant to section

7(a) of the Act, upon Galvez' petition to establish parentage. Section 7(a) provides that

"[a]n action to determine the existence of the father and child relationship, whether or

not such a relationship is already presumed under Section 5 of this Act, may be brought by the child; the mother; \*\*\* or a man presumed to alleging himself to be the father or the child or expected child." 750 ILCS 45/7(a) (West 2008).

Once a petition to establish parentage is filed with the court, the court "shall" order DNA testing if a party requests it. *In re Parentage of Jon M.*, 212 Ill. 2d at 264; 750 ILCS 45/11(a) (West 2008). Rentas asserts section 11 provides for DNA testing at any time prior to judgment in a paternity case. He contends the circuit court erroneously interposed a *de facto* time limitation in section 11 where none exists and should have granted his request for a DNA test instead of finding it untimely.

Section 11(a) does indeed provide for DNA testing prior to judgment in a paternity case. It provides that, "[a]s soon as practicable, the court \*\*\* may, and *upon request of party shall*, order or direct the mother, child and alleged father to submit to deoxyribonucleic acid (DNA) tests to determine inherited characteristics. If any party refuses to submit to the tests, the court *may resolve the question of paternity* against that party or enforce its order if the rights of others and the interests of justice so require." (Emphasis added.) 750 ILCS 45/11(a) (West 2008). From this language, it is clear that, where the matter of paternity is unresolved, the court must order a DNA test if one of the parties requests it. But Jose Jr.'s paternity was not unresolved. The court made a judicial determination resolving Jose Jr.'s paternity in 2006, when it entered its order declaring Rentas to be the father of the boy. Accordingly, since the matter of the boy's paternity was resolved, Rentas had no right to DNA testing under section 11.

Rentas argues, however, that the 2006 agreed order establishing his paternity was not a judgment/final order under section 14 of the Parentage Act (750 ILCS 45/14 (West 2008)) and, therefore, could be modified prior to judgment and did not preclude his request for DNA testing under section 11.   A judgment is a final determination and official decision of a court with respect to the rights and obligations of the parties to a lawsuit.  *Smith*, 212 Ill. 2d at 398.  A final judgment determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.  *Shermach v. Brunory*, 333 Ill. App. 3d 313, 316-17 (2002).  "An order is final [when] matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the order."  *In re T.M.*, 302 Ill. App. 3d 33, 37 (1998).  The court's 2006 order is a final judgment resolving Jose Jr.'s paternity.

The court entered the 2006 order pursuant to Galvez's petition requesting the court to (a) declare that Rentas the father of her son, (b) declare that the boy was to remain in Illinois pending resolution of all issues and (c) award any other relief the court deemed equitable.  Rentas appeared *pro se* at the hearing on the petition.  He did not oppose the petition, contest Galvez's claims regarding the nature of her relationship with Rentas and his paternity or challenge the validity of the agreed order or DNA report .  Based on this evidence, the court entered the 2006 parenting agreed order and joint parenting agreement.

The 2006 order was a final judgment.  It resolved all issues pending before the court on Galvez's petition and set forth the obligations of the parties toward Jose Jr.  It

conclusively established Rentas as Jose Jr.'s biological and legal father, awarded Rentas and Galvez joint legal and physical custody, ordered that Jose Jr. would remain with Rentas and Galvez at Galvez's home in Chicago and set forth Rentas' and Galvez' equal responsibilities in providing for the boy's welfare. Rentas has never moved to amend or vacate the September 2006 order.

Rentas argues that, because the 2006 order did not explicitly reserve or contain any prohibitions regarding the duty and amount of child support, it was not a judgment pursuant to section 14(a)(1) of the Act and could be modified at any time before judgment. Section 14 sets forth provisions for judgment in parentage cases. 750 ILCS 45/14 (West 2008). Specifically, section 14(a)(1) provides, in pertinent part: "The judgment *shall* contain or explicitly reserve provisions concerning *any* duty and amount of child support and may contain provisions concerning the custody and guardianship of the child, [and] visitation privileges with the child *** ." (Emphasis added.) 750 ILCS 45/14(a)(1) (West 2008).

Citing an assortment of cases, Rentas asserts that an order establishing paternity is not a final order if it does not at least rule on the amount of child support for which a respondent is liable. See *Deckard* v. Joiner, 44 Ill. 2d 412, 413-14 (1970) (order establishing paternity was not final and appealable because child support requested by mother could not be set due to the father's unemployment); *Shermach*, 333 Ill. App. 3d at 317 (appellate court had no jurisdiction to address the merits of mother's appeal from orders modifying child custody because orders did not fully

9

resolve issue of permanent child support); *Baldassone v. Gorzelanczyk*, 282 Ill. App. 3d 330, 334 (1996) (order of parentage and temporary child support was not final and appealable despite a Rule 304(a) (134 Ill. 2d R. 304(a)) finding because order continued issues of permanent and retroactive child support and medical insurance).

Rentas is correct that a finding of paternity alone is not a final order if it does not dispose of all matters in dispute. However, the 2006 order did dispose of all matters in dispute. It addressed the matters raised by Galvez (paternity and nonremoval of the boy from Illinois) and additional matters such as custody. It did not address child support because child support was not in dispute. Galvez did not ask for it and Rentas was not required to pay it because child support is only required from noncustodial parents. In 2006, Rentas was a custodial parent. He lived with Galvez and Jose Jr. and, with Galvez, jointly supported the boy. As a custodial parent, Rentas did not have "any duty" to pay child support. Because Rentas had no duty to pay child support, there was nothing for the court to address pursuant to section 14(a)(1). It was only when Rentas moved out of Galvez's home that child support and medical insurance became disputed issues pursuant to the Department's petition to modify child support. While Rentas lived with Galvez and supported the boy, he had no noncustodial duty of support that needed to be addressed by the court pursuant to section 14. There is no language in section 14(a)(1) requiring that a judgment contain a provision addressing

child support where no such support is due.[1]

Moreover, even if, as Rentas asserts, the 2006 order was not a final judgment when entered, it became final when the court entered the February 2007 order specifically reserving issues of child support and medical insurance. *Deckard*, 44 Ill. 2d at 417 (order setting amount of child support rendered final a previous order establishing paternity which had not been final and appealable because child support requested by mother had not been set). In January 2007, the Department had moved to intervene on issues of parentage, child support and health insurance. The court, on February 14, 2007, issued an order stating a parentage order and joint parenting agreement had been entered in September 2006 and "issues of support and medical are hereby reserved as the parties are currently living together." The court's 2007 reservation of the issue of child support clearly met the section 14(a)(1) requirement that a judgment must contain a provision addressing "any duty" of child support. The 2006 judgment became final at that point.

------

[1] The 2006 order did not specifically state that, because Rentas was a custodial parent, no child support was due from him at that time. However, such can clearly be inferred from the fact that the court stated the parties were living together with their son in Galvez's home, physical custody of the boy would "remain with the parties" at Galvez's home and the parties had joint legal custody of the boy, "with equal rights and responsibilities regarding the rearing and overall well-being of Jose Jr."

The case pending before the court, the case in which Rentas filed his request for DNA testing pursuant to section 11(a), is not an unresolved paternity case. The September 13, 2006, order of the circuit court conclusively established Rentas' paternity of Jose Jr. A court loses jurisdiction 30 days after the entry of a final order. *In re Parentage of G.E.M.*, 382 Ill. App. 3d 1102, 1118 (2008). To vacate a court order after 30 days, the movant must bring a section 2-1401 petition within two years of entry of the order. *In re Parentage of G.E.M.*, 382 Ill. App. 3d at 1118. Rentas did not move to amend or vacate the September 2006 order within 30 days nor did he timely file a section 2-1401 petition. Instead he filed a request for a DNA test some three years after entry of the judgment. That request should have been filed during the proceeding to establish parentage in 2006 or before the 2006 order became final. The case before the court now is limited to determinations of child support and health insurance. Although a parentage order may become final, pursuant to the Act, the court has the continuing jurisdiction to modify an order for support, custody, visitation or removal included in a judgment entered under the Act. 750 ILCS 45/16 (West 2008). Such is at work here, where the Department filed for modification of the existing order reserving child support on behalf of Galvez. The court did not err in denying Rentas' untimely post judgment request for a DNA test pursuant to section 11(a) of the Act.

For the reasons stated above, we affirm the decision of the circuit court.

Affirmed.

HOFFMAN and THEIS, JJ., concur.

12

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

GUADALUPE GALVEZ,

Petitioner,

v.

JOSE RENTAS,

Respondent-Appellant

(The Illinois Department of Healthcare and Family Services, Intervenor-Appellee).

No. 1-09-2231

Appellate Court of Illinois
First District, Second Division

August 10, 2010

JUSTICE KARNEZIS delivered the opinion of the court.

HOFFMAN and THEIS, JJ., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Patricia M. Logue, Judge Presiding.

For APPELLANT:  Edward J. Moran, of Chicago

For APPELLEE:  Lisa Madigan, Attorney General of the State of Illinois, and Michael A. Scodro, Solicitor General (Jan E. Hughes, Assistant Attorney General, of counsel)